APPLICATION OF WALTER MARVIN, JR., APPELLANT.

Argued October 21 and 22, 1968—Decided January 20, 1969.

*Mr. Michael D. Schottland* argued the cause for appellant.

*Mr. Arthur J. Sills,* Attorney General, argued the cause for respondents (*Mr. John W. Hayden, Jr.,* Deputy Attorney General, of counsel and on the brief; *Mr. Samuel D. Bornstein,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

JACOBS, J.   The appellant Walter Marvin, Jr. applied for a firearms purchaser identification card under *N. J. S.* 2A: 151–35. He declined to answer several questions in the application form and thereafter he was advised that his application had been denied. He appealed unsuccessfully to the county court and the Appellate Division. *In re Walter Marvin, Jr.,* 97 *N. J. Super.* 62 (*App. Div.* 1967). He then appealed to this court under *R. R.* 1:2–1(a).

*N. J. S.* 2A:151–35, as soundly construed by the Appellate Division, provides that every applicant for a pistol permit or a firearms purchaser identification card shall state, *inter alia,* whether he is or ever has been a member of an organization which he knows to advocate the commission of acts of force or violence designed to overthrow the Government or deny others their constitutional rights. Implementing the statutory provision, the application form promulgated by the Superintendent of State Police contains questions twenty-two to twenty-four inclusive which inquire into such memberships and the dates thereof. 97 *N. J. Super.,* at 66. In his application, the appellant declined to answer the ques-

tions with the comment that they were vague and sought "to penalize membership in organizations against which there has been no judicial finding of the commission of a crime." The local chief of police denied the application because it was incomplete. In an affidavit filed in connection with the appellant's appeal to the county court, the chief of police pointed out that the omitted answers were needed for determination as to whether further investigation was called for, and that membership in an organization of the type inquired about would not necessarily lead to a denial of the application. In its affirmance of the action by the chief of police, the county court found that the statutory requirement was "a valid exercise of the police power of the State of New Jersey and is clearly within the provisions of the United States Constitution and the Constitution of the State of New Jersey and does not infringe upon or violate any of the constitutional rights of the applicant." The Appellate Division reached the same conclusion for the reasons expressed in its reported opinion. 97 *N. J. Super.* 62.

The appellant does not question the State's right to regulate the purchase and carrying of firearms. See *Burton v. Sills,* 53 *N. J.* 86 (1968). Nor does he question the State's right to take appropriate steps towards prevention of the violent overthrow of the Government or the violent denial of constitutional rights. Indeed, he explicitly acknowledges that the State may properly include questions designed to ascertain whether the firearms are intended for use by extremist paramilitary or other types of organizations dedicated to the forceful overthrow of the Government or the forceful denial of constitutional rights, but he takes the position that the questions actually set forth in the application form were vague and overbroad and in that respect ran afoul of Supreme Court cases such as *Whitehill v. Elkins,* 389 *U. S.* 54, 88 *S. Ct.* 184, 19 *L. Ed. 2d* 228 (1967); *Keyishian v. Board of Regents,* 385 *U. S.* 589, 87 *S. Ct.* 675, 17 *L. Ed. 2d* 629 (1967); *Elfbrandt v. Russell,* 384 *U. S.* 11, 86 *S. Ct.* 1238, 16 *L. Ed. 2d* 321 (1966); *Dombrowski v.*

*Pfister,* 380 *U. S.* 479, 85 *S. Ct.* 1116, 14 *L. Ed. 2d* 22 (1965) ; *Aptheker v. Secretary of State,* 378 *U. S.* 500, 84 *S. Ct.* 1659, 12 *L. Ed. 2d* 992 (1964) ; and *Baggett v. Bullitt,* 377 *U. S.* 360, 84 *S. Ct.* 1316, 12 *L. Ed. 2d* 377 (1964). See Israel, "Elfbrandt v. Russell: The Demise of the Oath?," 1966 Supreme Court Review 193 ; Note, "Loyalty Oaths," 77 Yale L. J. 739 (1968). See also *United States v. Brown,* 381 *U. S.* 437, 85 *S. Ct.* 1707, 14 *L. Ed. 2d* 484 (1965) ; *Cramp v. Board of Public Instruction,* 368 *U. S.* 278, 82 *S. Ct.* 275, 7 *L. Ed. 2d* 285 (1961), and *United States v. Robel,* 389 *U. S.* 258, 88 *S. Ct.* 419, 19 *L. Ed. 2d* 508 (1967), commented upon in Gunther, "Reflections on *Robel,*" 20 Stanford L. Rev. 1140 (1968).

In dealing with the federal opinions we must bear clearly in mind just what the pertinent statutory requirement is aimed at and precisely what it does and does not entail. It is part of New Jersey's Gun Control Law which seeks to prevent criminal and other unfit elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences. See *Burton v. Sills, supra,* 53 *N. J.* 86. It does not require any loyalty or comparable oath on sanction of loss of employment or criminal prosecution; it does not prohibit any organizational membership or any organizational act on sanction of criminal or other penalty; and it does not provide for denial of a pistol permit or firearms purchaser identification card because of membership in any designated organization. It does, however, direct the administrative official to inquire whether the applicant is or has been a member of an organization which he knows to advocate the commission of acts of force or violence designed to overthrow the Government or deny to others their constitutional rights. The inquiry is clear and understandable and may be answered negatively, affirmatively or qualifiedly. Whatever the answer, it merely serves as a basis for any needed further inquiry by the official who at all times has the affirmative burden of determining whether the applicant is individually qualified

or disqualified under the terms of *N. J. S.* 2A :151–33. *Cf. Konigsberg v. State Bar of California,* 366 *U. S.* 36, 81 *S. Ct.* 997, 6 *L. Ed. 2d* 105 (1961) ; *In re Anastaplo,* 366 *U. S.* 82, 81 *S. Ct.* 978, 6 *L. Ed. 2d* 135 (1961) ; see also *Borrow v. F. C. C.,* 109 *U. S. App. D. C.* 224, 285 *F. 2d* 666 (*D. C. Cir.*), *certiorari* denied, 364 *U. S.* 892, 81 *S. Ct.* 223, 5 *L. Ed. 2d* 188 (1960) ; *Ilowite v. United States,* 390 *F. 2d* 589 (*3d Cir.* 1968), vacated for mootness, 393 *U. S.* 15, 89 *S. Ct.* 47, 21 *L. Ed 2d* 15 (1968).

In making his determination, the official is not authorized to deny an application because of organizational membership alone, although he may deny where the totality of the circumstances before him discloses that the applicant is unfit to purchase and carry lethal weapons and that the issuance of a permit or identification card to him would therefore "not be in the interest of the public health, safety or welfare." *N. J. S.* 2A :151–33 (*d*). See *Burton v. Sills, supra,* 53 *N. J.* 86. Where the applicant is an active member of an extremist paramilitary organization dedicated to the forceful overthrow of the Government or the forceful denial of constitutional rights, the totality of the circumstances may for obvious reasons support a finding of unfitness within the statutory contemplation. On the other hand, where the applicant is an inactive member of a political organization which, though ideologically favoring the forceful overthrow of democratic government, has no paramilitary or weapons-gathering aspects, the totality of the circumstances may for equally obvious reasons support a finding of fitness within the statutory contemplation. In any event, the administrative official will, in the first instance, have the direct responsibility of passing judgment on the applicant's fitness on the basis of his full investigation ; the official's judgment will be reviewable in the county court (*N. J. S.* 2A :151–34) and the county court's action will, in turn, be reviewable in the Appellate Division (*R. R.* 2 :2–1) and in this Court if necessary. *R. R.* 1 :2–1 ; *R. R.* 1 :10–2.

In *Konigsberg, supra,* the petitioner sought to be admitted to practice law in California. He declined to answer questions addressed to him by the Committee of Bar Examiners as to his present and past membership in the Communist Party on the ground that the questions infringed upon his constitutional freedoms of speech and association. The Committee refused to certify him for admission because his refusals to answer had obstructed a full investigation into his qualifications. This action was sustained by a sharply divided Supreme Court. Speaking for a majority, Justice Harlan rejected the petitioner's contention and in the course of his opinion said:

[G]eneral regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved. See, *e. g., Schneider v. State,* 308 *U. S.* 147, 161, 60 *S. Ct.* 146, 150, 84 *L. Ed.* 155, 164; *Cox v. New Hampshire,* 312 *U. S.* 569, 61 *S. Ct.* 762, 85 *L. Ed.* 1049, 133 *A. L. R.* 1396;. *Prince v. Massachusetts,* 321 *U. S.* 158, 64 *S. Ct.* 438, 88 *L. Ed.* 645; *Kovacs v. Cooper,* 336 *U. S.* 77, 69 *S. Ct.* 448, 93 *L. Ed.* 513, 10 *A. L. R.* 2d 608; *American Communications Ass'n v. Douds,* 339 *U. S.* 382, 70 *S. Ct.* 674, 94 *L. Ed.* 925; *Breard v. Alexandria,* 341 *U. S.* 622, 71 *S. Ct.* 920, 95 *L. Ed.* 1233, 35 *A. L. R.* 2d 335. It is in the latter class of cases that this Court has always placed rules compelling disclosure of prior association as an incident of the informed exercise of a valid governmental function. *Bates v. Little Rock,* 361 *U. S.* 516, 524, 80 *S. Ct.* 412, 417, 4 *L. Ed.* 2d 480 486. Whenever, in such a context, these constitutional protections are asserted against the exercise of valid governmental powers a reconciliation must be effected, and that perforce requires an appropriate weighing of the respective interests involved. *Watkins v. United States,* 354 *U. S.* 178, 198, 77 *S. Ct.* 1173, 1184, 1 *L. Ed.* 2d 1273, 1290; *N. A. A. C. P. v. Alabama,* 357 *U. S.* 449, 78 *S. Ct.* 1163, 2 *L. Ed.* 2d 1488, *supra; Barenblatt v. United States,* 360 *U. S.* 109, 126–127, 79 *S. Ct.* 1081, 1092–1093, 3 *L. Ed.* 2d 1115, 1128, 1129; *Bates v. Little Rock* (*U. S.*) *supra; Wilkinson v. United States,* 365 *U. S.* 399, 81 *S. Ct.* 567; 5 *L. Ed.* 2d 633; *Braden v. United States,* 365 *U. S.* 431, 81 *S. Ct.* 584, 5 *L. Ed.* 2d 653. With more particular reference to the present context of a state decision as to character qualifications, it is difficult, indeed, to imagine a view of the constitutional protections of speech

and association which would automatically and without consideration of the extent of the deterrence of speech and association and of the importance of the state function, exclude all reference to prior speech or association on such issues as character, purpose, credibility, or intent. 366 *U. S.*, at 50–51, 81 *S. Ct.*, at 1007, 6 *L. Ed. 2d*, at 116–117.

■ New Jersey's interest in preventing the gathering of firearms by groups dedicated to the forceful overthrow of the Government or the forceful denial of constitutional rights appears to exceed by far the interest of the State advanced in *Konigsberg.* See 97 *N. J. Super.*, at 68. And the intrusions on speech and association as well as the jeopardies to private interests would appear to be much lesser in nature. If, as *Konigsberg* and other Supreme Court opinions indicate, balancing is appropriate, then surely New Jersey's interest is "sufficient to outweigh the minimal effect upon free association" occasioned by compulsory disclosures of membership in organizations of the type inquired about here. See 366 *U. S.*, at 52, 81 *S. Ct.* 997, 6 *L. Ed. 2d,* at 118. While the Gun Control Law seeks to avoid weapons gathering by threatening groups (97 *N. J. Super.*, at 68), it is in nowise aimed at penalizing political beliefs. It places the burden of investigating and justifying any denial on the administrative official and contains ample protection, including full judicial review, against arbitrary action. See 366 *U. S.*, at 52–56, 81 *S. Ct.* 997, 6 *L. Ed. 2d,* at 118–120.

The appellant contends that "the *Konigsberg* case has been overruled" by the decisions in *United States v. Brown,* 381 *U. S.* 437, 85 *S. Ct.* 1707, 14 *L. Ed. 2d* 484 (1965) and *Aptheker v. Secretary of State, supra,* 378 *U. S.* 500, 84 *S. Ct.* 1659, 12 *L. Ed. 2d* 992, and that it should therefore "neither control nor guide this Court in its analysis of the matter now pending." The majority opinions in *Aptheker* and *Brown* do not mention *Konigsberg* and do not suggest any constitutional infirmity in the course taken by New Jersey's Legislature in *N. J. S.* 2A:151–35. In *Aptheker*

the Supreme Court struck down § 6 of the Subversive Activities Control Act of 1950 which declared it unlawful for a member of a Communist organization to apply for or use a passport of the United States. The Court's opinion pointed out that the statutory restriction against the right to travel was entirely too broad for it rendered "irrelevant the member's degree of activity in the organization and his commitment to its purpose" and it applied "regardless of the purposes" for which the individual wished to travel. 378 *U. S.*, at 510, 511, 84 *S. Ct.*, at 1666, 12 *L. Ed. 2d*, at 1000. In other words the exclusion was automatic because of the membership in the communistic organization; in clear contrast, the listing of any organizational membership in response to an inquiry under *N. J. S.* 2A:151–35 simply serves as a factor in aid of the investigation by the administrative official whose ultimate and reviewable judgment will rest on a weighing of all of the pertinent factors in the light of the evils sought to be curbed by New Jersey's Gun Control Law.

In *Brown* the petitioner had been convicted of violating § 504 of the Labor-Management Reporting and Disclosure Act of 1959 which made it a crime for a Communist Party member to serve as a union officer or employee. The conviction was reversed in the Court of Appeals and this was sustained by the Supreme Court in an opinion which declared § 504 to be unconstitutional as a bill of attainder. In his opinion for the majority, Chief Justice Warren acknowledged that Congress had authority to enact legislation designed to keep from positions affecting commerce "persons who may use such positions to bring about political strikes." 381 *U. S.*, at 449–450, 85 *S. Ct.*, at 1715, 14 *L. Ed. 2d*, at 492. But Congress had exceeded its authority by designating members of the Communist Party as the objectionable persons rather than by setting forth "a generally applicable rule decreeing that any person who commits certain acts or possesses certain characteristics (acts and characteristics which, in Congress' view, make them likely to initiate

political strikes) shall not hold union office", and leaving "to courts and juries the job of deciding what persons have committed the specified acts or possessed the specified characteristics." 381 *U. S.*, at 450, 85 *S. Ct.*, at 1715, 14 *L. Ed. 2d*, at 492. That New Jersey's Gun Control Law satisfies the foregoing and embodies none of the aspects of a bill of attainder is readily apparent and requires no elaboration here. See *N. J. S.* 2A :151–33 ; 97 *N. J. Super.*, at 74.

The appellant places considerable reliance on *Elfbrandt v. Russell, supra,* 384 *U. S.* 11, 86 *S. Ct.* 1238, 16 *L. Ed. 2d* 321 and *Keyishian v. Board of Regents, supra,* 385 *U. S.* 589, 87 *S. Ct.* 675, 17 *L. Ed. 2d* 629 and is critical of the Appellate Division's distinguishing comment that those cases dealt with the academic freedom of teachers, an area which the Supreme Court considers to be "a special concern" of the first amendment. See 97 *N. J. Super.*, at 71. *Elfbrandt* and *Keyishian* do not in any event furnish any substantial support for the appellant's attack on *N. J. S.* 2A :151–35. In *Elfbrandt* the Court invalidated an Arizona loyalty oath which state employees were required to take. A person who subscribed to the oath and was or thereafter became a knowing member of an organization which had as one of its purposes the violent overthrow of the Government was subject to immediate discharge and criminal penalties. Nothing in the oath purported to exclude association by one who did not subscribe to the organization's unlawful end. In the course of his opinion for the majority, Justice Douglas expressed the thought that "those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees." And he noted that "laws such as this which are not restricted in scope to those who join with the 'specific intent' to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization" and are therefore unconstitutional. 384 *U. S.*, at 17, 86 *S. Ct.*, at 1241, 16 *L. Ed. 2d,* at 325: New Jersey's law imposes no such conclusive

presumption; on the contrary, the applicant may qualify his answer in any manner he sees fit and the administrative official's investigation proceeds from that point on; and there would be no sufficient basis for a finding of unfitness if it appeared that the applicant did not share the unlawful aims of the organization and that the granting of his application would not imperil the legitimate goals of the Gun Control Law.

In *Keyishian* the Court struck down the teacher's loyalty oath of New York on various grounds which have little or no pertinency here. It found statutory ambiguities and obscurities which might prohibit the employment of one who merely advocated the forceful overthrow of government "in the abstract without any attempt to indoctrinate others, or incite others to action in furtherance of unlawful aims." 385 *U. S.,* at 599–600, 87 *S. Ct.,* at 682, 17 *L. Ed.* 2d, at 638. It further found that under the statute "proof of nonactive membership or a showing of the absence of intent to further unlawful aims" would not rebut the statutory presumption of disqualification or prevent the dismissal of the employee. 385 *U. S.,* at 608, 87 *S. Ct.,* at 686, 17 *L. Ed.* 2d, at 644. In effect, the Court was applying the holding in *Elfbrandt* which has no controlling applicability here. See Israel, *supra,* 1966 Supreme Court Review 193; Note, *supra,* "Loyalty Oaths," 77 Yale L. J. 739.

In the light of all of the foregoing we find, as did the Appellate Division, that the inquiry called for by *N. J. S.* 2A :151–35 is not unconstitutionally vague or overbroad. However, in doing so, we reiterate the sweep of the applicant's freedom in qualifying his responses to the inquiry. Thus he may answer negatively without more, or affirmatively as to known organizations, or by a denial of knowledge as to doubtful organizations. He may include such explanations as he considers appropriate, and may expressly confine his answers to present and recent memberships, pointing out that since the sole issue is his current qualification to purchase and carry weapons, his past memberships may be

inquired about only to the extent that they are relevant and reasonably related to his present fitness. *Cf. Schware v. Board of Bar Examiners,* 353 *U. S.* 232, 244–247, 77 *S. Ct.* 752, 1 *L. Ed. 2d* 796, 804–806 (1957); *Lowenstein v. Newark Board of Education,* 33 *N. J.* 277, 284–289 (1960), *s. c.* 35 *N. J.* 94 (1961). Whatever the answers, the administrative official who has the affirmative burden of determining whether the applicant is qualified or disqualified, will decide what further inquiry, if any, is necessary. In the case before us, there was no answer to the pertinent inquiry and we reject the appellant's position that he was constitutionally privileged under the first amendment to refuse to answer it at all. Accordingly, the judgment of the Appellate Division is:

*Affirmed,* without prejudice to a new application and without costs at any level.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.