179 N.J. Super. 352 (1981)
432 A.2d 116
JOINT LEGISLATIVE COMMITTEE ON ETHICAL STANDARDS, STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM O. PERKINS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1981.
Decided June 5, 1981.
*353 Before Judges BOTTER, KING and McELROY.
Harold J. Cassidy argued the cause for appellant (Perkins & Cassidy, attorneys).
Ivan J. Punchantz, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by McELROY, J.A.D.
*354 This matter involves interpretation of the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 et seq., and, in particular, N.J.S.A. 52:13D-16 b. The pertinent part of this statute reads as follows:
b. No State officer or employee or member of the Legislature, nor any partnership, firm or corporation in which he has an interest, nor any partner, officer or employee of any such partnership, firm or corporation, shall represent, appear for, or negotiate on behalf of, or agree to represent, appear for or negotiate on behalf of, any person or party other than the State in connection with any cause, proceeding, application or other matter pending before any State agency; provided, however, this subsection shall not be deemed to prohibit a member of the Legislature from making an inquiry for information on behalf of a constituent, if no fee, reward or other thing of value is promised to, given to or accepted by the member of the Legislature, whether directly or indirectly nor shall anything contained herein be deemed to prohibit any such partnership, firm or corporation from appearing on its own behalf.
The essential facts are not in dispute. Defendant, who is, and during the period in question was, an attorney-at-law of this State was elected to the State Assembly in November 1975 for the usual term of office ending on January 10, 1978. During his tenure defendant on May 24, 1977 appeared at a hearing before the Division of Motor Vehicles in behalf of one Columbus Carter in a matter involving revocation of Carter's driving privileges. At the hearing he identified himself as a member of the Legislature and conducted cross-examination of a police officer as well as direct examination of Carter. Thereafter, on a letterhead of his law office he wrote to the Division of Motor Vehicles in regard to Carter's matter.
Complaint was made to the Joint Committee on Ethical Standards that defendant was in violation of N.J.S.A. 52:13D-16 b. That body held a hearing on April 17, 1978 at which defendant contended his appearance at the Carter hearing was permitted by subsection b because he was making an inquiry for information on behalf of a constituent for no fee, reward or other thing of value. The Joint Committee found defendant's contention lacking in merit, found him in violation of the conflicts statute by virtue of his appearance at Carter's hearing and by reason of *355 his subsequent letter of September 30, 1977 wherein he filed exceptions to the hearing officer's report. The Joint Committee levied a fine of $200 and held that it had jurisdiction to hear and resolve the matter because the violation had occurred during defendant's term of office. The findings of the Joint Committee and the requirement that defendant pay the fine to the Treasurer of the State of New Jersey were embodied in a resolution dated April 17, 1978. Defendant sought no relief from this determination and the imposition of a fine, nor did he pay the fine. As a result of defendant's inaction the Joint Committee, pursuant to N.J.S.A. 52:13D-22(j) and N.J.S.A. 2A:58-1 et seq., sued defendant for collection of the fine. The matter was heard in the Hudson County District Court and resulted in a judgment against defendant.
Defendant in this appeal urges that (1) N.J.S.A. 52:13D-16 b violates the First and Fourteenth Amendments of the United States Constitution; (2) it offends the New Jersey Constitution because the activities punished have no connection to defendant's public duties or responsibilities; (3) the Joint Committee lacks power to punish an assemblyman because such power constitutionally lies solely with the entire Assembly and may not be delegated; (4) the statute sets no clear standards for punishment and (5) the Joint Committee lacked jurisdiction over defendant because at the time it considered his case he was no longer a member of the State Assembly. We reject these contentions and affirm the judgment entered below.
Defendant contends that the statute has "a chilling effect [sic] on attorneys who wish to be candidates for the legislature, but though specially trained in many areas relevant to the office, many are effectively excluded from the legislature." He also asserts:
The chilling effect of N.J.S.A. 52:13D-16b with respect to individuals who practiced law before administrative agencies and the ability of the legislature to suspend, sanction or remove one for violating that section has a profound implication upon not only the defendant's First Amendment right of freedom of expression, freedom of association, but implicates the defendant's constituents' *356 right to vote and right of political association. The statute would tend to reduce the field of candidates. If restrictions on the access to the ballot of potential candidates affect the fundamental right to vote, then dismissal of the voters' elective choice, would do violence to the fundamental right to vote.
Defendant acknowledges the underlying purposes of the conflicts law but asserts a proposition we deem lacking in substance, viz., that the "State's purpose to discourage corruption and the appearances of corruption are not sufficiently compelling to justify the abridgement of the First and Fourteenth Amendment rights of the defendant and his voting constituents under the facts of the present case." We observe (see Evid.R. 9(2)(d) and (e)), that the act challenged became effective over nine years ago and that neither the record below nor common knowledge demonstrate that in the ensuing nine or ten years there has been, realistically, any shortage of lawyers in either house.[1] Obviously, voters have not been denied the right to send competent lawyers to the Legislature, nor has there been a dearth of candidates willing to sacrifice appearances before state agencies in order to be a legislator. Defendant does not contend that this statute kept him from running for office, nor could he since the statute was in effect when he ran for office in 1975. Moreover, the record does not reflect that appellant's right to seek reelection was "chilled" by this enactment. The question is not one of standing to challenge the statute (no such issue is raised by respondent); rather we consider appellant's *357 arguments at best hypothetical, and at worse illusory and fanciful. This is no proper basis for resolution of fundamental constitutional rights and the required balance of competing constitutional values. Anderson v. Sills, 56 N.J. 210, 220 (1970).
Even if the effect of this enactment were, as defendant suggests, to "chill" or repress the rights here asserted, that fact alone cannot carry the day for defendant in this case. As we view this matter, exacting judicial scrutiny of the conflicting individual rights and the compelling public or state interest demonstrate a substantial nexus between such public interest and the statute at hand which clearly outweighs the "repressive effect" upon the asserted rights. New Jersey Chamber of Commerce v. Election Law Enforcem. Comm'n, 82 N.J. 57, 69-70 (1980). The rights here asserted are not absolute. United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796, 810 (1973). In Anderson v. Sills, supra, Chief Justice Weintraub observed:
The question in the case is not merely whether there are some individuals who might be "chilled" in their speech or associations by reason of the police activity here involved. Rather the critical question is whether that activity is legal, and although the amount of "chill" might in a given case be relevant to the issue of legality, the fact of "chill" is not itself pivotal. Indeed, the very existence of this Court may "chill" some who would speak or act more freely if there were no accounting before us for trespassers against others. But government there must be, for without it no value could be worth very much. The First Amendment itself would be meaningless if there were no constituted authority to protect the individual from suppression by others who disapprove of him or the company he keeps. Hence the First Amendment rights must be weighed against the competing interests of the citizen. If there is no intent to control the content of speech, an overriding public need may be met even though the measure adopted to that end operates incidentally to limit the unfettered exercise of the First Amendment right. In re Marvin, 53 N.J. 147, 152-153 (1969), cert. denied, 396 U.S. 821, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969). If a properly drawn measure is within the power of government, it is no objection that the exercise of speech or association is thereby "chilled." Cameron v. Johnson, 390 U.S. 611, 619, 88 S.Ct. 1335, 20 L.Ed.2d 182, 189 (1968); United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680 (1968). [56 N.J. at 226]
In enacting the Conflicts of Interest Law the legislature in N.J.S.A. 52:13D-12(a) declared:

*358 In our representative form of government, it is essential that the conduct of public officials and employees shall hold the respect and confidence of the people. Public officials must, therefore, avoid conduct which is in violation of their public trust or creates a justifiable impression among the public that such trust is being violated.
In furtherance of that salutary objective N.J.S.A. 52:13D-16 b prohibited members of the Legislature from the type of appearance in which defendant here engaged. The clear intent of this proscription is to prevent appearances by legislators before agencies over whom they have plenary budgetary and statutory control, thus avoiding the likelihood that they may exercise undue influence over agency decisions or appear to do so. The State clearly has a substantial legitimate interest in maintaining the integrity of agency hearings of the type here involved and in guarding such procedures from even the appearance of improper influence. Defendant sought public office. In so doing he accepted the obligation to subordinate his private rights to the extent they may compete with the legitimate, substantial and superior public right. Cf. Lehrhaupt v. Flynn, 140 N.J. Super. 250 (App.Div. 1976), aff'd o.b., 75 N.J. 459 (1978). Here, as in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), it is unnecessary to look beyond the clearly expressed intent and primary purpose of this act to find a constitutionally sufficient justification for the subordination of the private rights here asserted to the overwhelmingly critical public need. To view the matter otherwise is to foster the appearance of improper influence which can disastrously erode confidence in our executive agencies and our system of representative government. We decline to do so.
Defendant's arguments that the statute sets no clear standards for punishment, that the activities punished have no connection to his public duties and that the Joint Committee lacked jurisdiction over him because at the time of its consideration of his case he was no longer a member of the Legislature, we deem to be clearly without merit. R. 2:11-3(e)(1)(E).
*359 Lastly, we deal with defendant's contention that the Legislature's delegation of power to the Joint Legislative Committee on Ethical Standards to enforce the New Jersey Conflicts of Interest Law and to impose fines for the violation of its provisions is unconstitutional. Defendant contends that Art. IV, § IV, par. 3 of the New Jersey Constitution of 1947 reposes exclusive authority in each house of the Legislature to punish its members. Thus, defendant asserts that only the Assembly can punish its members, but it has no power to punish members of the Senate. He also contends that the Constitution "clearly anticipates any action to punish a member to be taken by the entire Legislature." (We are obliged to note that defendant did not initially object to the jurisdiction of the Joint Committee to hear and decide the charges against him, nor did he request that body to refer the disciplinary proceeding to the General Assembly as a whole for a hearing. We do not, however, rest disposition of defendant's argument upon that ground.)
Article IV, § IV, par. 3 provides:
Each house shall choose its own officers, determine the rules of its proceedings, and punish its members for disorderly behavior. It may expel a member with the concurrence of two-thirds of all its members.
It is not necessary for us to determine the full scope of authority for each house of the Legislature to punish its members for disorderly behavior or to determine the extent of "disorderly behavior" contemplated by this section of the Constitution. The Conflicts of Interest Law, N.J.S.A. 52:13D-12 et seq., is a general legislative enactment applicable to all state officers, employees, special state officers and employees, as broadly defined in N.J.S.A. 52:13D-13, and members of the Legislature. It is as much a general law as the criminal law of the State, for violation of which any person, including a legislator, may be subject to a prescribed penalty. The Legislature has established two special administrative agencies to enforce the provisions of the Conflict of Interest Law. N.J.S.A. 52:13D-21 grants to the Executive Commission on Ethical Standards the power to administer and enforce the law as to state officers, *360 special state officers and employees of the Executive Branch. Likewise, N.J.S.A. 52:13D-22 empowers the Joint Legislative Committee on Ethical Standards to give advisory opinions and to initiate, receive, hear and review complaints regarding violations of the Act. It has the same powers with respect to codes of ethics approved by the Legislature by concurrent resolution pursuant to N.J.S.A. 52:13D-23(c).
The Joint Legislative Committee is authorized to impose fines of $100 to $500 against any state officer or employee, or special state officer, or employee in the Legislative Branch, or any member of the Legislature found guilty of violating the provisions of the act or of a code of ethics promulgated thereunder. N.J.S.A. 52:13D-22(i) and (j). A minimum fine of $100 is imposed, limiting the discretion of the Joint Legislative Committee to that extent. Subsection (i) authorizes the suspension from office or employment of any state officer or employee, or special state officer, or employee in the Legislative Branch found guilty of violating the provisions of the act or of a code of ethics for a period not exceeding one year, and authorizes the Joint Committee to bar such person from holding any public office or employment for a period of up to five years for "willful and continuous disregard of this act or of a code of ethics promulgated pursuant to the provisions of this act...." By contrast, subsection (j) limits the penalty that may be imposed on a member of the Legislature to a fine and "such further action as may be determined by the House of which he is a member." This latter section goes on to provide:
In such cases the joint committee shall report its findings to the appropriate House and shall recommend to the House such further action as the joint committee deems appropriate, but it shall be the sole responsibility of the House to determine what further action, if any, shall be taken against such member.
Thus, the act subjects legislators, as well as all other persons of the Legislative and Executive Branches of State Government who are subject to its terms, to general prohibitory provisions for violation of which penalties may be imposed by either of the *361 aforesaid enforcement agencies. Both agencies are given adjudicatory and enforcement powers similar to that possessed by other state administrative agencies. Although penalties may be imposed, collection must be pursued in summary proceedings pursuant to the Penalty Enforcement Law, N.J.S.A. 2A:58-1 et seq.; N.J.S.A. 52:13D-21(i); N.J.S.A. 52:13D-22(i) and (j). We do not construe N.J.Const. (1947) Art. IV, § IV, par. 3, as prohibiting the Legislature from enacting general laws applicable to those classes of persons, including legislators, appropriate to its subject. Legislators are liable for violation of such a law to the same extent as any other person subject to the same law, except that the power to expel a member of the Legislature is expressly limited by the aforesaid section of the Constitution.
The enactment of the Conflicts of Interest Law does not limit the power of the Legislature to supervise the conduct of its members. The Legislature must be free to determine in a comprehensive manner that conduct which is contrary to the interest of order within the legislative system. Our State Constitution is regarded as one of limitational restriction of powers, leaving residual authority and power of the sovereign people of this State in the hands of the Legislature to the extent that such powers have not been restricted. In re Lamb Application, 67 N.J. Super. 39, 58 (App.Div. 1961), aff'd 34 N.J. 448 (1961); State v. Murzda, 116 N.J.L. 219, 222 (E. & A. 1935). The Legislature has the power to set reasonable rules for the integrity and order of its houses by regulating the conduct of its members; it has additional authority to establish by general laws restrictions on the conduct of persons, including legislators, within a common classification; and it has authority to establish an agency or body to enforce those general laws and to impose penalties on persons who violate such laws. The function of such an agency or body may be distinguished from legislative committees that may be established to assist the Legislature in performing its function as provided in Art. IV, § V, par. 2 of our *362 Constitution.[2] In any case, the functions of the Joint Committee established under the Conflicts of Interest Law are consistent with this constitutional provision, particularly insofar as the committee may recommend to the appropriate house of the Legislature further action against legislators who violate the provisions of this law by disorderly behavior.
For the reasons stated the judgment below is affirmed.
NOTES
[1] In 1975, when appellant was elected, 35% of the New Jersey Senate and 20% of the General Assembly were lawyers. Fitzgerald's Legislative Manual (1975). In 1978, when defendant appeared before the Joint Committee, 45% of the Senate and 18.75% of the General Assembly were practicing lawyers. Ibid. (1978). This year practicing attorneys comprise 47% of the members of the Senate and 21% of the members of the General Assembly. Legislative Index, vol. LXVIII, No. 1 (January 1981). The number of practicing lawyers in each house will naturally vary from year to year and has been higher in the past, but compared to other professions, lawyers continue to occupy their fair share of the seats. In any event, it cannot realistically be said, as appellant appears to blandly assume, that the legal profession is the sole and special repository of legislative talent or that the electorate prefers lawyer-legislators to those from other walks of life.
[2] N.J.Const. (1947), Art. IV, § V, par. 2, provides:

The legislature may appoint any commission, committee or other body whose main purpose is to aid or assist it in performing its functions. Members of the Legislature may be appointed to serve on any such body.