243 N.J. Super. 187 (1990)
578 A.2d 1257
CARL R. WOOD, CHARLES J. LYNCH, JAMES J. METZ AND JOSEPH B. SZEBENYI, PETITIONERS-APPELLANTS,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, BUREAU OF REGULATORY AFFAIRS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1990.
Decided August 15, 1990.
*189 Before Judges KING, SHEBELL and KEEFE.
Jan M. Schlesinger argued the cause for appellant (Schlesinger, Schlosser, Foy & Mintz, attorneys).
Michael R. Clancy, Assistant Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael R. Clancy of counsel).
The opinion of the court was delivered by KING, P.J.A.D.
This case involves two issues:
1. Does the Office of Administrative Law (OAL) have jurisdiction to decide if a lawyer-legislator is disqualified under the Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -27 from representing litigants in contested administrative cases?
2. If so, was lawyer-legislator Assemblyman Thomas P. Foy, appearing in a contested Department of Community Affairs (DCA) licensing case, properly held disqualified for conflict of interest?
We answer "Yes" to both questions. We conclude that the OAL had the power to disqualify Mr. Foy and that it properly exercised the power. His proposed appearance before an administrative law judge hearing a contested case under the aegis of the DCA was an appearance before a State agency and was not exempt from the Conflicts of Interest Law. The OAL had the power to rule on Mr. Foy's disqualification even though its ruling conflicted with the prior ruling of the Joint Legislative Committee on Ethical Standards created by N.J.S.A. 52:13D-22.
This is an interlocutory appeal from the final decision of the Director of the Office of Administrative Law, Judge LaVecchia, disqualifying General Assemblyman Foy, an attorney, from representing four appellants in contested case hearings pending in the OAL. The State, through the DCA, sought to suspend or downgrade the licenses of appellants, who are local fire inspectors, *190 for alleged violations of the Uniform Construction Code Act, N.J.S.A. 52:27D-119 to -141. The State claims that appellants had performed improper inspections on building plan approvals. Mr. Foy[1] filed requests for hearings on their behalf and the cases were sent to the OAL as contested matters.
In issue is the application of the Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -27 and, in particular, N.J.S.A. 52:13D-16b, which prohibits members of the State Legislature from representing private parties before any State agency. In response to a request from Mr. Foy, the Legislature's Joint Committee on Ethical Standards issued a letter opinion through its counsel on March 20, 1989 advising that Mr. Foy's representation in this matter would not violate the Conflicts of Interest Law because "an appearance before an administrative law judge generally does not constitute an appearance before a State agency."
The Attorney General, on behalf of the OAL, moved to disqualify Mr. Foy under N.J.A.C. 1:1-5.3, which states in pertinent part:
1:1-5.3 Conduct of lawyers.
In any case where the issue of an attorney's ethical or professional conduct is raised, the judge before whom the issue has been presented shall consider the merits of the issue raised and make a ruling as to whether the attorney may appear or continue representation in the matter. The judge may disqualify an attorney from participating in a particular case when disqualification is required *191 by the Rules of Professional Conduct or the New Jersey Conflict of Interest Law.
The Attorney General contended that, notwithstanding the Joint Committee's advisory opinion, Mr. Foy's participation in these pending cases would be in violation of the Conflicts of Interest Law and an appropriate ground for his disqualification.
On November 15, 1989 ALJ Goldberg disqualified Mr. Foy from participating as counsel at the contested hearings. Mr. Foy requested and received interlocutory review within the OAL from the Director. See N.J.A.C. 1:1-3.2(c); N.J.A.C. 1:1-14.10(k). On December 12, 1989 the Director and Chief ALJ, LaVecchia, affirmed Judge Goldberg. She confirmed the OAL's jurisdiction under N.J.A.C. 1:1-5.3 to decide the issue of a lawyer-legislator's disqualification in OAL proceedings, concluding: "Attorney ethics involving OAL proceedings are for the OAL to decide, subject to judicial review. That jurisdiction cannot be preempted except by legislation duly enacted and signed by the Governor." We granted leave to appeal, R. 2:2-4, on February 5, 1990 to review this important question. As noted, we agree with Judge LaVecchia and affirm.
Our Supreme Court has ruled that the OAL has the inherent power "to prescribe suitable rules governing its practice and procedure in contested cases, which necessarily include standards governing the qualifications of persons appearing in such matters." Matter of Tenure Hearing of Onorevole, 103 N.J. 548, 557, 511 A.2d 1171 (1986). The Director of the OAL has the express statutory power to "[d]evelop uniform standards, rules of evidence, and procedures ... to regulate the conduct of contested cases and the rendering of administrative adjudications...." N.J.S.A. 52:14F-5e. To this end the OAL promulgated N.J.A.C. 1:1-5.3, which provides that "[t]he judge may disqualify an attorney from participating in a particular case when disqualification is required by the Rules of Professional Conduct or the New Jersey Conflict of Interest Law." As noted, disqualifications are promptly reviewable by interlocutory application under N.J.A.C. 1:1-14.10(k)5.
*192 Judge LaVecchia disqualified Mr. Foy from representing the four appellants in this matter on the ground that his participation would violate the section of the Conflicts of Interest Law which prohibits attorneys who are also members of the State Legislature from representing private parties before State agencies. N.J.S.A. 52:13D-16b provides:

No State officer or employee or member of the Legislature, nor any partnership, firm or corporation in which he has an interest, nor any partner, officer or employee of any such partnership, firm or corporation, shall represent, appear for, or negotiate on behalf of, or agree to represent, appear for, or negotiate on behalf of, any person or party other than the State in connection with any cause, proceeding, application or other matter pending before any State agency; provided, however, this subsection shall not be deemed to prohibit a member of the Legislature from making an inquiry for information on behalf of a constituent, if no fee, reward or other thing of value is promised to, given to or accepted by the member of the Legislature, whether directly or indirectly nor shall anything contained herein be deemed to prohibit any such partnership, firm or corporation from appearing on its own behalf. [Emphasis added.]
The Director also found that Mr. Foy's representation did not fall within any of the exceptions to this provision found in N.J.S.A. 52:13D-16c.[2]
*193 Appellants contend that since the Joint Committee on Legislative Ethics, N.J.S.A. 52:13D-22, had advised that Mr. Foy's representation would not violate the Conflicts of Interest Law, the OAL lacks the authority to disqualify him under N.J.A.C. 1:1-5.3. Appellants assert that the Joint Committee has the sole authority to interpret and enforce the Conflicts of Interest Law as it applies to members of the Legislature and that the OAL lacks jurisdiction to enforce that law indirectly through its own regulation, N.J.A.C. 1:1-5.3.
The Conflicts of Interest Law was passed in 1971 in an effort to establish specific standards to guide the conduct of legislators and other public officials appearing before government agencies which were under regulation. In re Exec. Com'n on Ethical Standards, 116 N.J. 216, 219-220, 561 A.2d 542 (1989). When articulating the policy behind the Act, the Legislature stated:
In our representative form of government, it is essential that the conduct of public officials and employees shall hold the respect and confidence of the people. Public officials must, therefore, avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated. [N.J.S.A. 52:13D-12(a).]
The Legislature was as concerned with eliminating the mere appearance of impropriety by members of State Government as it was with regulating instances of actual conflict of interest or undue influence. In re Exec. Com'n on Ethical Standards, 116 N.J. at 220, 561 A.2d 542.
The specific section of the Conflicts of Interest Law in issue here, N.J.S.A. 52:13D-16b, prohibits legislators from representing individuals in proceedings before State agencies. By this *194 provision the Legislature sought specifically "to prevent appearances by legislators before agencies over whom they have plenary budgetary and statutory control, thus avoiding the likelihood that they may exercise undue influence over agency decisions or appear to do so." Joint Legis. Comm. on Ethical Standards v. Perkins, 179 N.J. Super. 352, 358, 432 A.2d 116 (App.Div. 1981), certif. den. 91 N.J. 195, 450 A.2d 530 (1982).
To enforce the Conflicts of Interest Law and the Legislative Code of Ethics promulgated pursuant to N.J.S.A. 52:13D-12(b), the Legislature created the Joint Legislative Committee on Ethical Standards (Joint Committee). N.J.S.A. 52:13D-22(h). The Joint Committee is authorized to initiate, receive, hear and review complaints regarding violations of the Conflicts of Interest Law and to impose fines and administer other appropriate disciplinary measures against any State officer or employee, special State officer, employee in the Legislative Branch, or any member of the Legislature found guilty of violating the Act or the Legislative Code of Ethics. N.J.S.A. 52:13D-22(i) and (j). See Joint Legis. Comm. on Ethical Standards v. Perkins, 179 N.J. Super. at 359-360, 432 A.2d 116. In addition to its enforcement powers, the Joint Committee is authorized "to render advisory opinions as to whether a given set of facts and circumstances would, in its opinion, constitute a violation of the provisions of" the Conflicts of Interest Law or the Legislative Code of Ethics. N.J.S.A. 52:13D-22(g).
In its March 20, 1989 opinion letter to Mr. Foy, the Joint Committee stated its view that his representation of the four appellants in this matter would not violate the Conflicts of Interest Law because an appearance before the OAL did not constitute "an appearance before a State agency" for the purposes of the Act. Counsel for the Committee elaborated:
Usually, the administrative law judge makes findings of law and fact and submits recommendations to the State agency, subject to adoption, rejection or modification by the State agency. Because the restrictions contained in the Law and Code are based upon avoidance of matters where a legislator may dispute an interest adverse to that of the State, it is to be noted that the Joint Committee is of the opinion that the State's interest becomes adverse for the *195 purposes of the Law and Code upon the final judgment of the State agency for whom the administrative law judge is determining the law and facts.
Appellants and, inferentially, the Joint Committee maintain that, aside from legislator conflicts which involve criminal prosecutions, the Joint Committee alone has the exclusive authority to interpret and implement the Conflicts of Interest Law with respect to members of the Legislative Branch.
Notwithstanding the Joint Committee's advisory opinion, we conclude that the relevant language of N.J.S.A. 52:13D-16b is clear:
No ... member of the Legislature ... shall represent ... any person or party other than the State in connection with any ... proceeding ... pending before any State agency....
"State agency" is rather broadly defined under the Act as
any of the principal departments in the Executive Branch of the State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department, the Legislature of the State and any office, board, bureau or commission within or created by the Legislative Branch, and, to the extent consistent with law, any interstate agency to which New Jersey is a party and any independent State authority, commission, instrumentality or agency. A county or municipality shall not be deemed an agency or instrumentality of the State. [N.J.S.A. 52:13D-13a.]
Absent a demonstration of specific intent to the contrary, the words of a statute should be given their ordinary and well understood meaning. In re Barnert Memorial Hospital Rates, 92 N.J. 31, 40, 455 A.2d 469 (1983); Renz v. Penn Central Corp., 87 N.J. 437, 435 A.2d 540 (1981). Mr. Foy's representation of the appellants constitutes representation of persons other than than the State in connection with a proceeding before a State agency, here the OAL. The Joint Committee's conclusion that the OAL (or the ALJ) is not a State agency in the circumstances ignores the plain language of the statutory definition. The OAL is an independent office in the Executive Branch of the State Government, created by the Legislature and given the power to prescribe and enforce its *196 own rules of practice and procedure.[3]Onorevole, 103 N.J. at 555, 511 A.2d 1171; N.J.S.A. 52:14F-1; 52:14F-5.
Since the OAL's function here was to conduct administrative hearings on behalf of the Department of Community Affairs, the OAL's authority was derivative of the authority of the DCA. Hence the OAL, in addition to being a State agency in itself, was also an adjudicative extension of the DCA, which retains the authority to render the final administrative determination in this case. N.J.S.A. 52:14B-10(c); See In re Uniform Adm'v Procedure Rules, 90 N.J. 85, 91-92, 447 A.2d 151 (1982) (creation of OAL did not alter basic regulatory authority of various State agencies). Moreover, both the OAL and the DCA are agencies over which the Legislature has plenary budgetary and statutory control. Each clearly fits the act's definition of "state agency" before which legislators are prohibited from representing private interests and this interpretation serves the cleansing philosophical purpose of the Conflicts Law.
Significantly, Mr. Foy's representation of the appellants in this matter does not fall within any of the numerous legislatively-created exceptions listed in N.J.S.A. 52:13D-16c above. Subsection c. contains many references to specific agencies and courts before which Legislators are permitted under the Conflicts of Interest Law to appear or represent the interests of private parties. While subsection c. has been otherwise amended since the creation of the OAL in 1978, see L. 1987, c. 432, § 3, the Legislature has never elected to add to the exceptions *197 by including the OAL in the list of exempted agencies. Indeed, in concluding his advisory opinion in this very case, Counsel for the Joint Committee observed that: "Although the ruling has been questioned from time to time, and legislation has been offered to reflect the ruling, we are unfamiliar with any disqualification of lawyer-legislators initiated by the OAL, the Office of the Attorney General or any litigants." [Emphasis supplied.] The failure on the part of the Legislature to amend the exceptions to N.J.S.A. 52:13D-16b, and to add the OAL to them, severely undermines the Joint Committee's conclusion that the OAL is not a State agency to which the Conflicts of Interest Law was meant to apply. Where as many as nine exceptions to the law are enumerated, we will not add an extra one by implication.
Because the unequivocal language of the Conflicts of Interest Law prohibits legislators from representing private parties before a State agency, we conclude that Director LaVecchia properly disqualified Mr. Foy under N.J.A.C. 1:1-5.3 from appearing before the OAL in this matter. We fully recognize that the Joint Committee has exclusive authority to administer disciplinary proceedings internally within the Legislature and to render advisory opinions regarding potential violations of the Act and the Legislative Code of Ethics. See State v. Gregorio 186 N.J. Super. 138, 144, 451 A.2d 980 (Law Div. 1982). However, we perceive no authority or good reason for the appellants' assertion that the Legislature intended the Joint Committee's advisory interpretations and enforcement powers under the Conflicts of Interest Law to bind inexorably the other two branches of State Government as the exclusive organ of implementation.
A similar contention was rejected in State v. Gregorio, 186 N.J. Super. at 147, 451 A.2d 980, where the defendant was charged with criminal offenses that also constituted violations of the Conflicts of Interest Law and the Legislative Code of Ethics. The defendant attempted to characterize the authority *198 of the Joint Committee on Ethical Standards to decide issues of legislative ethics as a legislative design to vest in that agency the exclusive authority to punish conduct which violated the Conflicts of Interest Law. Judge Baime, then of the Law Division, rejected the defendant's contention, concluding that such a view, which would presuppose a legislative intent to immunize members of the Legislature for conduct which has historically been the subject of criminal prosecution, would be "at odds with logic, contrary to public policy, and would constitute a perversion of the legislative objective to foster the `respect and confidence of the people' in our representative form of government. N.J.S.A. 52:13D-12(a)." Ibid.
Just as the power of the Legislature to enforce its own code of ethics within that body did not divest the Executive Branch of the authority to prosecute criminal acts, we conclude that it cannot deprive the OAL, an executive agency, of the authority to regulate the qualifications and conduct of attorneys who appear before it. Onorevole, 103 N.J. at 555, 511 A.2d 1171. The OAL, through N.J.A.C. 1:1-5.3, regulates legislators as lawyers, not as legislators. More is at stake than legislative ethics alone. The interest sought to be furthered by OAL regulation of the qualifications of lawyers in this manner is somewhat distinct from that furthered by the enforcement of legislative ethics by the Joint Committee:
The standards governing the ethics disqualification of attorneys appearing before a tribunal clearly pertain to the rules that generally control agency procedure and practice. The resolution of particular questions as to an attorney's possible ethics disqualifications has an impact on the quality of the agency's performance and implicates the statutory responsibilities of the agency. Such questions, and their appropriate resolution, therefore, transcend the immediate interests of the parties. See Hasbrouck Heights v. Division of Tax Appeals, 48 N.J. Super. 328, 334 [137 A.2d 585] (App.Div. 1958).
Moreover, such issues directly affect the integrity and independence of administrative agency performance; conversely, they do not relate directly, if at all, to the merits of the particular case or controversy in which such an issue may arise. Thus, in determining whether an agency has the authority to deal with the question of an attorney's ethics qualifications it is important to acknowledge the stake that the agency has in its own integrity. [Onorevole, 103 N.J. at 555, 511 A.2d 1171.]
*199 Thus, while the Legislature may retain the exclusive authority to advise upon or discipline its members for ethical violations, that authority cannot override the OAL's own legitimate special interest in protecting the integrity of the administrative hearing process. Id.; Joint Legis. Comm. on Ethical Standards v. Perkins, 179 N.J. Super. at 358, 432 A.2d 116.
By disqualifying Mr. Foy in this matter the OAL furthers the purpose of the Conflicts of Interest Law, to avoid conduct which creates an appearance that the public trust "is being violated." N.J.S.A. 52:13D-12(a). As ALJ Goldberg pointed out in his initial opinion in this matter:
The appearance by a lawyer who is also a legislator before the OAL when the State is an adverse party creates a real potential for the public's perception of undue influence. The public can justifiably believe that a lawyer/legislator can exercise powerful influences over an ALJ when representing private interest. Unlike Superior Court judges, there are no ALJ's with tenure, and their five-year terms must be periodically reviewed with the advice and consent of the Senate. The public could reasonably perceive an ALJ, especially one who is close to reappointment, as being susceptible [to] influence by a lawyer who happens also to be a legislator. The public must have confidence that when appearing before the OAL it will receive an initial determination based on the merits of the case and not collateral influences.
Contrast the appearance by Rutgers law professors before the Council on Affordable Housing, permitted as not presenting "any special appearance of impropriety or trading on influence." In re Exec. Com'n on Ethical Standards, 116 N.J. at 226, 561 A.2d 542. Whether or not the Joint Committee perhaps may someday decide to discipline a legislator for representing petitioners before the OAL is irrelevant; the OAL's decision here to disqualify Mr. Foy, where the language of the Conflicts Law is so clearly implicated, both lends itself to the protection of the integrity of the OAL and enhances the paramount objective of the Conflicts of Interest Law to "ensure propriety and preserve public confidence" in government. Knight v. Margate, 86 N.J. 374, 391, 431 A.2d 833 (1981), quoting N.J.S.A. 52:13D-12(b).
We will not entertain a narrow view of the OAL's authority to decide the qualifications of counsel who appear before it. *200 Our Supreme Court has not suggested any crabbed view of the OAL's inherent power to address in the first instance any attorney's ethical status or qualifications. Onorevole, 103 N.J. at 554-555, 511 A.2d 1171. To accept appellants' contention we would have to rule that Mr. Foy could participate in this most critical stage of the administrative proceeding, including the initial decision before the ALJ, but then must back out and not appear further at the agency level where the final decision is made and the policy of the agency is executed. This position of the Joint Committee  "that the State's interest becomes adverse for the purposes of the [Conflicts of Interest] Law and [Ethics] Code upon the final judgment of the State agency for whom the administrative law judge is determining the law and facts"  just does not wash. The decision-making function will not be so finely fractionalized at the risk of diluting the appearance of the integrity of the administrative process.
Justice O'Hern recalled the background which two decades ago prompted the passage of the Conflicts Law in In re Com'n on Ethical Standards, 116 N.J. at 220, 561 A.2d 542, when he said
The particular evil that occasioned the passage of the conflicts law was the appearance of impropriety by members of the official family of State Government representing interests before agencies of the very government with which they were associated. There is a familiar concern at both state and national levels of trading this influence in the public sphere to the disadvantage or to the apparent disadvantage of the public.
We agree and affirm.
SHEBELL, J.A.D., concurring.
I agree with the view of my colleagues that the Office of Administrative Law (OAL) has full authority to decide the qualifications and disqualifications of attorneys that appear before it. See N.J.A.C. 1:1-5.3. In addition, it is clear that when the controversy presented to the OAL must ultimately be decided by a state agency or official it is not unreasonable to conclude that the appearance of a conflict of interest is present. The appearance is indistinguishable from that perceived when a *201 lawyer-legislator represents a client directly before the state agency or official.
Therefore, I find it unnecessary to decide the issue of whether the Conflicts of Interest Law, N.J.S.A. 52:13D-12 et seq., prohibits lawyer-legislators in all cases from appearing as counsel in the administrative law courts. We should avoid so broad a ruling, particularly where as here, it precipitates a conflict between the branches of government. Further, the majority's holding detracts from, rather than enhances, the "independent" status of the OAL. N.J.S.A. 52:14F-1. I choose to regard the OAL as being as independent of influence as "any court of record" or Workers' Compensation court, and fully capable of conducting a proper proceeding where a state legislator appears as counsel. See N.J.S.A. 52:13D-16c. As a practical matter, however, I envision few, if any, instances in which a lawyer-legislator would be permitted to appear as counsel before the OAL since a state agency or officer would in all likelihood almost always be the final arbiter in the matter coming before the administrative law tribunal.
I concur in the decision to affirm.
NOTES
[1] We hasten to recite and agree with Judge LaVecchia's comments absolving Mr. Foy of any impropriety. She said in her opinion:

I note at the outset that there has been no allegation that Mr. Foy has used or attempted to use his office inappropriately in this proceeding. Indeed, the Department refers to this motion as "akin to a declaratory judgment action" necessary to resolve conflicting interpretations of the Conflicts of Interest Law by the Department and the Attorney General on the one hand, and Mr. Foy and the Joint Committee on the other hand. Thus, no negative inferences should be drawn regarding Mr. Foy's professional integrity as a result of my affirmance of the Order of Disqualification. It is just happenstance that he is the legislator-attorney involved in the matter in which this issue will be resolved.
[2] N.J.S.A. 52:13D-16c states:

Nothing contained in this section shall be deemed to prohibit any legislator, or any State officer or employee or special State officer or employee from representing, appearing for or negotiating on behalf of, or agreeing to represent, appear for, or negotiate on behalf of, any person or party other than the State in connection with any proceeding:
(1) Pending before any court of record of this State,
(2) In regard to a claim for compensation arising under chapter 15 of Title 34 of the Revised Statute (Worker's Compensation),
(3) In connection with the determination or review of transfer inheritance or estate taxes,
(4) In connection with the filing of corporate or other documents in the office of the Secretary of State,
(5) Before the Division on Civil Rights or any successor thereof,
(6) Before the New Jersey State Board of Mediation or any successor thereof,
(7) Before the New Jersey Public Employment Relations Commission or any successor thereof,
(8) Before the Unsatisfied Claim and Judgment Fund Board or any successor thereof solely for the purpose of filing a notice of intention pursuant to P.L. 1952, c. 174, § 5 (C. 39:6-65), or
(9) Before any State agency on behalf of a county, municipality, or school district, or any authority, agency or commission of any thereof except where the State is an adverse party in the proceeding and provided he is not holding any office or employment in the State agency in which any such proceeding is pending.
[3] N.J.S.A. 52:14F-1. Establishment; allocation within department of state; office defined.

There is hereby established in the Executive Branch of the State Government the Office of Administrative Law. For the purpose of complying with the provisions of Article V, Section IV, paragraph 1 of the New Jersey Constitution, the Office of Administrative Law is hereby allocated within the Department of State, but notwithstanding said allocation, the office shall be independent of any supervision or control by the department or by any personnel thereof. As used in this act, "office" shall mean the Office of Administrative Law.