592 A.2d 1168

ALEXANDER'S DEPARTMENT STORES OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, AND SAKRAF WINE AND LIQUOR STORE, INC., A NEW JERSEY CORPORATION, PLAINTIFFS–RESPONDENTS, v. BOROUGH OF PARAMUS, NEW JERSEY JOSEPH CIPOLLA AS MAYOR OF THE BOROUGH OF PARAMUS, NEW JERSEY, THE BOROUGH COUNCIL OF THE

BOROUGH OF PARAMUS, NEW JERSEY, DEFENDANTS–RE-SPONDENTS, AND THE PLANNING BOARD OF THE BOR-OUGH OF PARAMUS, NEW JERSEY, WESTLAND PROPER-TIES, INC., A DELAWARE CORPORATION, WESTLAND GAR-DEN STATE PLAZA, L.P., A NEW JERSEY LIMITED PART-NERSHIP, WESTFIELD, INC., A CONNECTICUT CORPORA-TION, AND WESTFIELD MANAGEMENT, INC., A CALIFOR-NIA CORPORATION, DEFENDANTS, AND THE NEW JERSEY COUNCIL ON AFFORDABLE HOUSING, DEFENDANT–AP-PELLANT.

Argued May 6, 1991—Decided July 24, 1991.

*Joseph L. Yannotti*, Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Deputy Attorney General, of counsel; *Joseph L. Yannotti* and *Donald M. Palombi*, Deputy Attorney General, on the brief).

*Gary T. Hall* argued the cause for respondents Borough of Paramus, et al. (*McCarter & English*, attorneys; *Alfred L. Ferguson*, of counsel).

*Robert S. Raymar* argued the cause for respondents Alexander's Department Stores of New Jersey, Inc., and Sakraf Wine and Liquor Store, Inc. (*Hellring, Lindeman, Goldstein & Siegal,* attorneys; *Robert S. Raymar* and *Jonathan L. Goldstein,* of counsel).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns the use of actions in lieu of prerogative writs and the scope of the jurisdiction of the Council on Affordable Housing (COAH) created under the New Jersey Fair Housing Act of 1985, *N.J.S.A.* 52:27D–301 to –329 (FHA). Specifically at issue is whether a plaintiff challenging a borough's zoning ordinance that implements COAH's substantive certification of its fair-share housing plan may bring an action in lieu of prerogative writs in Superior Court or may bring such an action only before COAH or the Appellate Division.

■■ We find that the FHA does not restrict or extinguish a party's constitutional right to challenge municipal actions or decisions by instituting an action in lieu of prerogative writs. Although COAH possesses "extremely broad" powers, *Hills Dev. Co. v. Township of Bernards,* 103 *N.J.* 1, 32, 510 *A.*2d 621 (1986), including incidental jurisdiction over legal questions regarding the direction and control of its proceedings, it may not bar plaintiff from bringing suit in the Law Division challenging municipal actions not directly related to the COAH proceedings themselves. We therefore affirm the judgment of the Appellate Division, *see* 243 *N.J.Super.* 157, 578 *A.*2d 1241 (1990), remanding to the Law Division for further proceedings.

I

In an exclusionary-zoning suit brought in 1976 by a developer seeking to build low-income housing, defendant Borough of Paramus was ordered by the Law Division to rezone and provide a realistic opportunity for construction of affordable

housing. That court transferred the case to COAH shortly after the FHA was enacted in 1985. *See N.J.S.A.* 52:27D–316. During the ensuing two years, Paramus, various objectors including Westland Garden State Plaza, L.P., and Westland Properties, Inc. (Westland), and COAH worked on a plan for the Borough to meet the constitutional obligation to provide "a realistic opportunity for the construction of its fair share of low and moderate income housing." *See Southern Burlington County NAACP v. Township of Mount Laurel,* 92 *N.J.* 158, 221, 456 *A.*2d 390 (1983) (*Mt. Laurel* II).

In 1987, Paramus and Westland agreed that Westland would transfer $2,500,000 and eight to eleven acres of property to Paramus to be used to meet the Borough's low- and moderate-income housing need. Paramus, in turn, agreed to rezone Westland's property to provide both a new site for multi-family housing and a significant density increase to enable Westland to expand its mall by 750,000 square feet. That accord was set forth in an August 18, 1987 agreement and depended on Paramus receiving substantive certification from COAH for its housing element and fair-share plan and enacting zoning ordinance amendments.

On September 6, 1988, COAH granted substantive certification to Paramus's housing element and fair-share plan contingent on the municipality's subsequent adoption of the proposed zoning-ordinance amendments. Thereafter, on October 18, 1988, Paramus adopted the ordinance implementing its certified plan. Plaintiffs, Alexander's Department Stores of New Jersey, Inc., and Sakraf Wine and Liquor Store, Inc., (together "plaintiffs" or "Alexander's"), who also own commercial property in Paramus, had notice of COAH's proceedings and could have participated as objectors in the agency's evaluation of Paramus's fair-share plan but did not.

On December 8, 1988, Alexander's filed a complaint in lieu of prerogative writs in the Law Division, challenging the validity of the ordinance and naming Westland, COAH, Paramus, and

the Borough Council, Planning Board and Mayor of Paramus as defendants. The trial court dismissed counts alleging that defendants had violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, and had broken anti-trust laws, and that COAH had acted improperly in failing to refer the transferred builder's-remedy suit to the Office of Administrative Law (OAL) for an evidentiary hearing. The court denied defendants' motions to dismiss plaintiffs' remaining counts, which alleged that the Paramus–Westland agreement and zoning amendments were *ultra vires* and invalid as an unlawful sale of commercial zoning; that the agreement and zoning amendments unlawfully shifted to commercial developers the financial burden to fund Paramus's obligations under *Mt. Laurel* II and required them to finance improper off-site improvements; that by participating in negotiations for the agreement and zoning amendments Paramus's mayor had created an unlawful conflict of interest because of his relatives' relationship with Westland; that the agreement and zoning amendments were invalid because Paramus's governing body had made an unlawful contract not to alter a zoning scheme; that the zoning amendments were invalid spot zoning that created a favorable commercial zone consisting solely of Westland's properties; that contrary to COAH's substantive certification the agreement and ordinance did not provide a realistic opportunity for construction of affordable housing; that Paramus improperly failed to present the proposed amendments for the planning board's review; and that the ordinance was invalid because it was vague, inconsistent, and ambiguous.

The Appellate Division granted defendants' interlocutory appeal. Defendants argued that plaintiffs lacked standing to maintain the litigation, had failed to exhaust their administrative remedies, had presented their claims to the wrong court, and were barred by statutory time limitations as well as by principles of repose.

The Appellate Division affirmed in part and reversed in part. It dismissed, on principles of standing, plaintiffs' allegations

that the Westland agreement and zoning amendments failed to provide a realistic opportunity for the construction of low- and moderate-income housing. The court found that plaintiffs, as neighboring landowners and taxpayers, "cannot claim protection against zoning that unconstitutionally deprives others of housing opportunities, and * * * have an insufficient stake in the outcome of a suit to enforce the *Mt. Laurel* rights of others." 243 *N.J.Super.* at 165, 578 *A.*2d 1241. We denied plaintiffs' interlocutory cross-appeal on that point. —— *N.J.* —— (1991).

The court rejected COAH's argument that by choosing not to appear as objectors before COAH, plaintiffs had failed to exhaust their administrative remedies and should be barred from raising their arguments in the Law Division. The court found that plaintiffs' remaining counts had the following four common characteristics:

> (1) they do not question Paramus's satisfaction of its *Mt. Laurel* duties, (2) they are the kinds of attacks on municipal action that neighboring landowners or taxpayers have traditionally made by prerogative writ, (3) they do not directly challenge any decision made by COAH, and (4) many of them concern issues that did not ripen until after COAH granted substantive certification, when the governing body took action on the zoning amendments. [243 *N.J.Super.* at 166, 578 *A.*2d 1241.]

Accordingly, the court found that the remaining counts did not charge Paramus with failing to provide for affordable housing. The court recognized COAH's incidental jurisdiction over legal matters arising in the course of the agency's proceedings, but found no basis for granting to COAH jurisdiction over legal questions generally related to municipal action. It also rejected defendants' argument that allowing plaintiffs' suit in the Law Division would erode the Appellate Division's exclusive jurisdiction over appeals from state-agency decisions. *See R.* 2:2–3(a)(2). The court reasoned that "[o]nly if every related legal issue, including those ripening after COAH completed its work, had to be raised before COAH, [ ] would plaintiffs' failure to raise them there bar their Law Division suit." 243 *N.J.Super.* at 169, 578 *A.*2d 1241. Finally, the court rejected

defendants' challenge that plaintiffs' action was untimely. *Id.* at 169–70, 578 *A.*2d 1241.

We granted defendants' interlocutory appeal. —— *N.J.* —— (1991).

## II

An examination of the traditional causes of actions in lieu of prerogative writs and the scope of COAH's jurisdiction under the FHA demonstrates that plaintiffs' surviving counts are, as the Appellate Division concluded, properly cognizable in the Law Division.

Traditionally, prerogative-writ actions had been used by citizens to challenge agency decisions or actions. Article VI, section V, paragraph 4 of the New Jersey Constitution, however, provides:

> Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by the rules of the Supreme Court, *as of right*, except in criminal causes where such review shall be discretionary. [ (Emphasis added).]

That clause was drafted to "streamline and strengthen the traditional prerogative writs which were available in the pre-1947 Supreme Court." *In re LiVolsi*, 85 *N.J.* 576, 593, 428 *A.*2d 1268 (1981). The provision consolidated the established prerogative writs of *certiorari, quo warranto, prohibition,* and *mandamus* into one action that guaranteed a petitioner the same rights to appeal as were provided by those writs. *Id.* at 593–94, 428 *A.*2d 1268.

To bring an action in lieu of prerogative writs, a plaintiff must show that the appeal could have been brought under one of the common-law prerogative writs. *Id.* at 594, 428 *A.*2d 1268. The writ of *certiorari,* which "has long been available in New Jersey to afford judicial review of administrative agency actions in general and of municipal ordinances in particular," *Hills Dev. Co., supra,* 103 *N.J.* at 44–45, 510 *A.*2d 621, is the relevant prerogative writ for plaintiffs here. *See In re LiVolsi, supra,* 85 *N.J.* at 594, 428 *A.*2d 1268 ("It has always been one

of the primary purposes of the writ of *certiorari* to give the courts the power to review the actions of legislatively created administrative agencies.").

In *Hills Dev. Co.*, various parties asserted that the FHA was unconstitutional in whole or in part because it interfered with the judiciary's exclusive control over actions in lieu of prerogative writs. *See* 103 *N.J.* at 44, 510 *A.*2d 621. We found that the FHA did not foreclose the judiciary's power to review an ordinance acted on by COAH. *Id.* at 45, 510 *A.*2d 621. Specifically, we recognized that deference to administrative-agency decisions does not nullify the judiciary's obligation to review questions of law.

> Thus, all of the plaintiffs in the cases before us would appear to have a constitutional right, under Article VI, section V, paragraph 4, to judicial review of the municipalities' ordinances.
>
> We do not find that the Act has interfered impermissibly with this right to judicial review. * * *
>
> The presumption of correctness attached to the Council's determination by virtue of [*N.J.S.A.* 52:27D–317] will not strip the judiciary of its historic powers to invalidate illegal—let alone unconstitutional—actions; individuals will continue to be protected against invalid ordinances. [*Ibid.*]

*See also Holmdel Builders Ass'n v. Township of Holmdel,* 121 *N.J.* 550, 583 *A.*2d 277 (1990) (Law Division had exercised original jurisdiction over action in lieu of prerogative writs challenging town's exaction of development fees); *Nunziato v. Edgewater Planning Bd.,* 225 *N.J.Super.* 124, 541 *A.*2d 1105 (App.Div.1988) (Law Division had exercised original jurisdiction over action in lieu of prerogative writs challenging town's grant of variances).

Similarly, because plaintiffs sought to correct allegedly unlawful actions by a municipality, they could have brought a traditional action seeking a writ of *certiorari.* The question then becomes whether the FHA prevents plaintiffs from exercising their constitutional right to bring an action in lieu of prerogative writs to challenge the legality of the actions of COAH, Paramus, and the other defendants. We think not.

In *Southern Burlington County NAACP v. Township of Mount Laurel,* 67 *N.J.* 151, 336 *A.*2d 713, *appeal dismissed* and *cert. denied,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975) (*Mt. Laurel* I), we first set forth the doctrine mandating that municipal land-use regulations must provide a *realistic,* not just a theoretical, opportunity for the construction of lower-income housing. Eight years of litigation later, in *Mt. Laurel* II, we acknowledged that the Legislature was best suited to implement the doctrine but also that "enforcement of constitutional rights [could not] await a supporting political consensus." 92 *N.J.* at 212, 456 *A.*2d 390. The Legislature responded to this Court's request for action by enacting the FHA, which represented its "comprehensive planning and implementation response to [the] constitutional obligation" recognized in *Mt. Laurel* I and II. *N.J.S.A.* 52:27D–302c.

Under the FHA, the Legislature created COAH and gave it wide-ranging power to determine statewide needs for low- and moderate-income housing and to evaluate proposals by municipalities to meet their fair share obligations. *See id.* §§ 305–19. Specifically, the Legislature assigned to COAH responsibility for establishing statewide housing regions, estimating the need for low- and moderate-income housing, adopting criteria and guidelines for municipal fair-share determinations and adjustments, and related tasks. *Id.* § 307. It also authorized COAH to propose procedural rules and to determine when requested whether a municipality's proposed housing element satisfies its *Mt. Laurel* obligations. *Id.* §§ 308–13; *see Hills Dev. Co., supra,* 103 *N.J.* at 35–36, 510 *A.*2d 621.

Under the FHA's statutory framework, a municipality may petition COAH for substantive certification of its housing element at any time within six years of filing the plan. *See N.J.S.A.* 52:27D–313. COAH must grant substantive certification if the fair-share plan complies with COAH's rules and makes achievement of the municipality's fair share of low and moderate income housing "realistically possible." *See id.* § 314. Regulations adopted by COAH authorize certification of

municipal proposals that are "not inconsistent with achievement of the low and moderate income housing needs of the region," see *N.J.A.C.* 5:91–6.1, and that provide affirmative measures to enable a municipality to meet its fair share obligation. *See id.* § 10.1. The regulations make specific provision for maximum set-asides, gross density, and other considerations in inclusionary development. *See e.g., id.* § 8.4(c) and (e). If COAH grants substantive certification the municipality has forty-five days to adopt the approved fair share housing ordinance. *See N.J.S.A.* 52:27D–314.

In addition to giving COAH specific and detailed responsibilities to regulate the achievement of low- and moderate-income housing in New Jersey, the FHA outlines a set of procedures for conflict resolution during the proposal evaluation process. *See id.* §§ 315–316b. It requires COAH to conduct a mediation and review process either if any person files with COAH an objection to the substantive certification within forty-five days of publication of the municipality's petition, or if a party to an exclusionary-zoning case who meets certain criteria requests such a review. *See id.* §§ 314–16. If mediation efforts do not succeed, the FHA requires that COAH transfer the matter to the OAL as a contested case. *See id.* § 315c. It also specifies procedures for review of exclusionary-zoning cases instituted both before and after the effective date of the Act. *See id.* §§ 317–19. Generally, under those procedures, appeals from decisions by COAH are to be taken directly to the Appellate Division under *R.* 2:2–3.

The FHA's extensive provisions regarding COAH's regulatory powers and responsibilities reflect the agency's significant role in housing development and dispute resolution. Indeed, the FHA provides for transfer of exclusionary-zoning cases that were pending before trial courts for over sixty days prior to the statute's effective date based on a court's consideration of "whether or not the transfer would result in a manifest injustice to any party to the litigation." *N.J.S.A.* 52:27D–316a. In *Hills Dev. Co.,* we interpreted that transfer provision to

reinforce COAH's role as the initial arbiter of exclusionary zoning disputes, finding that "the Legislature intended *all* pending *Mount Laurel* cases to be transferred, except [when] unforeseen and exceptional unfairness would result." 103 *N.J.* at 49, 510 *A.*2d 621. The FHA's requirement that parties instituting exclusionary zoning litigation just before or after the passage of the FHA must request review and mediation with COAH further underscores that COAH has jurisdiction over all actions "challenging a municipality's zoning ordinance with respect to the opportunity to provide for low or moderate income housing." *See N.J.S.A.* 52:27D–316b. Additionally, any party filing an exclusionary-zoning action against a municipality that receives substantive certification must make COAH a party. *See id.* § 317c.

COAH's responsibilities require that "broad discretion * * * must be afforded [to it] in the exercise of its statutory duties." *Van Dalen v. Township of Washington,* 120 *N.J.* 234, 245, 576 *A.*2d 819 (1990). In *Van Dalen,* we affirmed that "[t]he grant of authority to an administrative agency should be liberally construed to enable the agency to accomplish the Legislature's goals." *Ibid.* In that appeal from COAH's grant of substantive certification of a township's housing element and fair-share plan, we refrained from rejecting COAH's reliance on the State Development Guide Plan to determine municipal fair-share obligations.

> Because the legislative scheme is novel, the implementation of its goals is necessarily an evolving process. Accordingly, COAH is entitled to a reasonable degree of latitude, consistent with the legislative purpose, in its effort to ascertain which planning and statistical studies best serve the long-term statutory objectives. [*Id.* at 246, 576 *A.*2d 819.]

Similarly, in *Holmdel Builders Ass'n v. Township of Holmdel, supra,* 121 *N.J.* at 576, 583 *A.*2d 277, we emphasized that COAH has both the power and the responsibility to promulgate regulations for development fees as part of its oversight of municipal fair-share housing elements. We stated that "[i]t cannot be overstressed that the Legislature, through the FHA, intended to leave the specific methods of compliance with *Mt.*

*Laurel* in the hands of COAH and the municipalities, charging COAH with the singular responsibility for implementing the statute and developing the state's regulatory policy for afforda- ble housing." *Id.* at 580, 583 *A.*2d 277. The Appellate Division has also recognized COAH's control over the contents of a municipality's fair-share-plan filing and the entitlement of a party to transfer a case to the OAL. *Hills Dev. Co. v. Town- ship of Bernards,* 229 *N.J.Super.* 318, 551 *A.*2d 547 (1988).

However, we disagree with COAH's expansive reading of its jurisdictional powers. Neither the plain language of its autho- rization ("[COAH] shall have primary jurisdiction for the admin- istration of housing obligations in accordance with sound re- gional planning considerations in this State," see *N.J.S.A.* 52:27D–304) nor the purpose of the statutory grant ("to produce ordinances and other measures that will fit together as part of a statewide plan * * * that provides a real chance * * * for the construction or rehabilitation of lower income housing," *Hills Dev. Co., supra,* 103 *N.J.* at 22, 510 *A.*2d 621) indicates a legislative intent that COAH should oversee those claims that involve issues of municipal administration. The entire body of regulations adopted by COAH addresses specific aspects of the achievement of affordable housing and not general concerns regarding the overarching legality of municipal proceedings.

■ In determining the scope of COAH's jurisdiction, we find significant that although the FHA authorizes COAH to promul- gate regulations regarding compliance with *Mt. Laurel,* it does not empower COAH to decide the underlying ordinances or the prerequisites to the ordinances' valid enactment. Although COAH has authority to determine whether a municipality's fair share plan truly provides a realistic opportunity for affordable housing, we agree with the Appellate Division that "[s]uch a determination does not ordinarily include a ruling whether a proposed ordinance and developer's agreement satisfy substan- tive and procedural legal standards generally applicable to such

municipal actions whether or not they are taken in a *Mt. Laurel* setting." 243 *N.J.Super.* at 167, 578 *A*.2d 1241.

COAH's statutory mandate in providing substantive certification, rather, is to evaluate a proposed plan's ability to help a municipality achieve *Mt. Laurel* compliance. The certification of Paramus's plan, therefore, involved a prediction of the plan's utility based on facts found. The certification process did not examine issues of the mayor's alleged conflict of interest, spot zoning, contract zoning, improper financing of off-site improvements, or the need for referral of the zoning amendment to the planning board.

We find unpersuasive COAH's assertions that various jurisdictional doctrines and rules support COAH's position. Under the doctrine of primary jurisdiction, courts generally decline to hear matters cognizable by an administrative agency. However, the present case may be readily distinguished from those in which courts have transferred matters to agencies. For example, in *Patrolmen's Benevolent Ass'n v. Town of Montclair*, 70 *N.J.* 130, 358 *A*.2d 180 (1976), the Court held that a complaint filed in the Law Division had to be transferred to the Public Employees Relations Commission because the relevant statute clearly delegated power to grant the relief sought—recognition as a bargaining agent—to that commission. Similarly, in *Sukin v. Northfield Bd. of Educ.*, 171 *N.J.Super.* 184, 187, 408 *A*.2d 446 (App.Div.1979), the court relied on a statutory grant to the Commissioner of Education of jurisdiction over school law-related disputes to find that the Commissioner had incidental jurisdiction over school-law controversies arising under the Open Public Meetings Act. *See also Board of Educ. v. Asbury Park Educ. Ass'n*, 155 *N.J.Super.* 76, 382 *A*.2d 392 (App.Div.1977) (trial court should have transferred claim regarding teachers' extracurricular duties to the Public Employees Relations Commission); *Shop–Rite of Hunterdon County, Inc. v. Township Comm.*, 131 *N.J.Super.* 428, 330 *A*.2d 378 (App.Div.1974) (plaintiff's Law Division action dismissed because plaintiff had not exhausted statutory right of appeal to

Director of Division of Alcoholic Beverage Control), *certif. denied*, 67 *N.J.* 94, 335 *A.*2d 47 (1975). In those cases, the court referred to the agency issues that fell squarely within the subject matter delegated to the agency by the enabling statute. In contrast, the FHA delegates authority over municipal ordinances to COAH only for modification of zoning to comply with *Mt. Laurel*. COAH has no authority over ordinances generally or over determining the prerequisites for their valid enactment. Therefore, the doctrine of primary jurisdiction does not bar plaintiffs from proceeding in the Law Division.

Neither does *R.* 2:2–3, which authorizes an appeal as of right to the Appellate Division from a final action of a state administrative agency, prevent plaintiffs from bringing an action in the Law Division. Because we find that Alexander's surviving claims were not subject to COAH's jurisdiction in the first instance, plaintiffs' action cannot be characterized as an "appeal" from COAH's determination that would have to be filed in the Appellate Division. In fact, the adoption of the ordinance in question did not occur until after the COAH proceedings had been completed. Additionally, because plaintiffs lack standing for purposes of *Mt. Laurel*, their status in contesting COAH proceedings would have been limited to "objector" and not "necessary party." Because plaintiffs were not required to participate, they cannot be foreclosed by their failure to do so, nor can they be limited to a *Rule* 2:2–3 appeal of the COAH determination.

In addition to the existence of actions in lieu of prerogative writs that accommodate precisely the type of challenge to a municipal action brought by plaintiffs, the Law Division's competence in settling legal questions strengthens our conclusion that plaintiffs' complaint should stand. As the Appellate Division recognized,

COAH's review and mediation procedures * * * are not formal or adversary, and are not designed to lead to rulings on legal questions that happen to relate to the subject matter. It would impede the mission of COAH if a party raising a related legal question could, on that basis alone, assert the right to an

adversary evidentiary hearing before COAH or an OAL hearing of a contested case. [243 *N.J.Super.* at 167, 578 *A*.2d 1241.]

If we were to endorse exclusive jurisdiction of COAH over challenges to municipal actions, such as conflict-of-interest and spot-zoning charges, that happen to relate to compliance with *Mt. Laurel,* we would effectively be turning over determinations of general legal questions to an administrative agency. COAH insists that because plaintiffs' claims challenge the means by which Paramus will meet its obligation under *Mt. Laurel,* they constitute a direct challenge to the agency's final determination and should be addressed to COAH and appealed to the Appellate Division. However, although the facts surrounding the spot-zoning count, for example, may be appropriately found by COAH, the determination of whether the Paramus–Westland agreement is unlawful lies within neither COAH's statutory mandate nor its developed expertise. Keeping in mind as well that COAH's procedures emphasize mediation to facilitate the provision of lower-income housing, we do not choose a course that will embroil the agency in resolution of legal questions not integral to its successful operation.

Our reasoning in this case accords with our holding in *Boss v. Rockland Elec. Co.,* 95 *N.J.* 33, 468 *A*.2d 1055 (1983), that disputed factual issues should be resolved by an administrative agency with the appropriate expertise and that courts should retain jurisdiction over legal questions. We stressed that our protection of the court's role did not narrow or eliminate an agency's primary jurisdiction in its area of expertise. Rather, "where the resolution of a contested legal issue properly before a court necessarily turns on factual issues within the special province of an administrative agency, the court should refer the factual issues to that agency." *Id.* at 42, 468 *A*.2d 1055. Like the instant case, we did not expand the agency's powers to permit it to determine the surrounding legal questions:

We do not imply that the agency may enlarge or contract the legal rights of the parties. When the legal rights of parties are clear, it is unjust and unfair to burden them with an administrative proceeding to vindicate their rights. [*Id.* at 40, 468 *A*.2d 1055 (citations omitted).]

While we emphatically placed fact-finding responsibility with the agency we retained jurisdiction over legal determinations for the courts. Of course, if there were an administrative fact-finding proceeding under COAH on parallel issues, those findings could be received in evidence and given appropriate weight in the judicial proceedings. *Thornton v. Potamkin Chevrolet*, 94 *N.J.* 1, 8, 462 *A.*2d 133 (1983).

We recognize that permitting such actions in the Law Division may also enable parties to slow realization of initiatives fostered by the *Mt. Laurel* decisions by challenging municipal actions in separate judicial proceedings. So long as judges remain alert to the possibility of dilatory actions, however, we are confident that any such tactics can be forestalled.

## IV

Both the plain language and underlying objectives of COAH's mandate in the FHA direct COAH's energies toward providing realistic opportunities for development of low- and moderate-income housing. Questions regarding the legality of municipal actions outside of COAH proceedings, although related, would unnecessarily distract COAH's full attention from regional planning in New Jersey. The governing statute and COAH's developed expertise support our longstanding view that COAH should make factual determinations regarding the quality of municipal fair-share proposals. At the same time, the existence of the action in lieu of prerogative writs as well as the Law Division's expertise in deciding general legal questions strengthen our view that challenges to municipal actions, such as that brought here by Alexander's, belong in the Law Division and not before COAH.

Therefore, we affirm the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.