14 A.3d 766 (2011)
418 N.J. Super. 509
Joseph VAS, Appellant,
v.
Joseph J. ROBERTS, Jr., Speaker of the New Jersey General Assembly, Respondent.[1]
No. A-0399-09T3.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2011.
Decided March 4, 2011.
*768 Alan L. Zegas, Chatham, argued the cause for appellant (Law Offices of Alan L. Zegas, attorneys; Mr. Zegas, Edward J. Byrne, and Terel L. Klein, on the brief).
J. Bradford McIlvain argued the cause for respondent (Archer & Greiner, P.C., attorneys; Mr. McIlvain and Natalie D'Amora, on the brief).
Before Judges PARRILLO, ESPINOSA and SKILLMAN.
*769 The opinion of the court was delivered by
PARRILLO, P.J.A.D.
Appellant, Joseph Vas, a former member of the New Jersey General Assembly (Assembly), appeals the decision of respondent, Joseph Roberts, Jr., former Assembly Speaker, to suspend Vas's salary and benefits while still holding office, pending the outcome of indictments charging him with crimes of public corruption. Appellant claims respondent's unilateral action in withholding his constitutionally guaranteed salary was not legally authorized and is therefore null and void. Respondent counters that his action is not appealable under Rule 2:2-3(a)(2) because it was neither a final agency decision nor that of a state administrative officer within the meaning of the Rule and that, in any event, the imposition of the disciplinary measure was well within his discretionary power as the presiding officer of the Assembly.
The relevant facts are undisputed. Vas, who served as the mayor of Perth Amboy from 1990 to 2008, represented the nineteenth legislative district in the Assembly for three consecutive terms beginning with the 2004-2005 term and ending with the 2008-2009 term. Following a two-year investigation of public corruption and money laundering, on March 11, 2009, a state grand jury returned an eleven-count indictment against Vas charging him with crimes committed while mayor of Perth Amboy, including conspiracy, misconduct, pattern of official misconduct, theft, misapplication of government property, and tampering with public records. Two months later, on May 21, 2009, Vas was charged in a separate nineteen-count state grand jury indictment with additional crimes committed in his capacity as Perth Amboy mayor, including conspiracy, official mis-conduct, misapplication of entrusted property, financial facilitation of criminal activity, theft, and a host of other related crimes. The day before, on May 20, 2009, a federal grand jury indicted Vas on eleven counts, charging him with defrauding the public, misapplication of government funds, making illegal campaign contributions, and related crimes. A subsequent federal indictment, returned on July 21, 2009, added more charges related to violations of campaign contribution laws.
Following the July 23, 2009 arrest of forty-four other persons, including three New Jersey mayors and two New Jersey assemblymen, respondent, in his capacity as Speaker of the General Assembly, notified Vas by letter of July 29, 2009, that he ordered the suspension of Vas's salary and benefits. In its entirety, the letter states:
The events that have transpired over the last few months and days, including the recent arrests and allegations of public corruption, have damaged public confidence in our governmental institutions.
This letter serves to advise you that pursuant to the advice of Legislative Counsel I have ordered the Assembly Clerk to suspend payment of your salary and benefits, effective immediately. Any member similarly charged in the future will be subject to the same course of action. Additionally, I renew my call for you to resign your position with the General Assembly.
This action, of course, will be consistent with guarantees of due process and subject to the final disposition of the criminal justice process and the procedures of the General Assembly.
Vas's counsel responded by letter of August 4, 2009, challenging respondent's "unilateral action" as "unauthorized and illegal" and requesting that Vas's salary and benefits be restored. The Speaker *770 replied the next day by letter denying the request and explaining:
[U]pon the advice of the Legislative Counsel, these actions are entirely within the powers invested in me as Speaker of the General Assembly.
As I indicated in my July 29, 2009 letter to Assemblyman Vas, recent events, including the Assemblyman's indictment in March, have undermined the public's trust in our governmental institutions. My decision to suspend his salary was motivated by my desire to restore public confidence, particularly in the Legislature.
Prior to taking any action, I consulted with Legislative Counsel regarding the authority of the Speaker to implement certain disciplinary actions against members. Legislative Counsel assured me that among the inherent powers of the Presiding Officer of the General Assembly is the power to suspend the compensation of members for good cause. Legislative Counsel further indicated that the facts in this particular circumstance constitute a valid reason for the suspension. I have included a copy of Legislative Counsel's opinion on this matter for your reference.
My decision to suspend Assembly Vas' salary and benefits stands.
The letter from legislative counsel to respondent, dated July 29, 2009, describes the powers and duties of the Speaker as prescribed by statutes and Assembly rules as well as the procedures for disciplining a member of the Assembly codified in statutes and rules, none of which explicitly authorize respondent's action. However, relying on the inherent powers of a legislative body's presiding officer and Errichetti v. Merlino, 188 N.J.Super. 309, 457 A.2d 476 (Law Div.1982), legislative counsel expressed his opinion that
the Speaker has the authority to suspend, not terminate, the compensation of a member for good cause (in this case intimating a sense of the General Assembly that it is in the public interest), subject to affording the member a fair hearing and, of course, ultimately upon such further review as the General Assembly deems appropriate.
This appeal follows, in which appellant challenges the Speaker's action as violative of his constitutional right to a salary while sitting, and unauthorized by either statute or Assembly rule.

I.
At the outset, we address the appealability of the Speaker's action and this court's jurisdiction. Prior to the adoption of the New Jersey Constitution of 1947, "persons aggrieved by action or inaction of state or local administrative agencies could seek review by applying for one of the prerogative writs." Pascucci v. Vagott, 71 N.J. 40, 51, 362 A.2d 566 (1976). The 1947 Constitution superseded the prerogative writs "and, in lieu thereof," afforded "review, hearing and relief . . . in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right." N.J. Const. art. VI, § 5, ¶ 4. Accordingly, "[i]n New Jersey, judicial review of administrative agency determinations has the support of a special constitutional provision." In re Senior Appeals Exam'rs, 60 N.J. 356, 363, 290 A.2d 129 (1972).
Pursuant to this constitutional grant, the Supreme Court adopted Rule 2:2-3(a)(2), which "contemplated that `every proceeding to review the action or inaction of a state administrative agency would be by appeal to the Appellate Division.'" Pascucci, supra, 71 N.J. at 52, 362 A.2d 566 (quoting Cent. R.R. Co. of N.J. v. Neeld, 26 N.J. 172, 185, 139 A.2d 110, cert. den., 357 *771 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958)). Thus, the rule mandates the exclusive allocation to the Appellate Division of review of both "final decisions or actions of any state administrative agency or officer, and . . . the validity of any rule promulgated by such agency or officer." R. 2:2-3(a)(2); see also Prado v. State, 186 N.J. 413, 422-23, 895 A.2d 1154 (2006). Our "jurisdiction extends not only to State agency action but also agency inaction." Pressler and Verniero, Current N.J. Court Rules, comment 3.1 on R. 2:2-3(a)(2) (2011) (emphasis added); see also N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 612, 443 A.2d 1070 (1982).
The traditional meaning of an administrative agency is "[a] governmental body with the authority to implement and administer particular legislation." Black's Law Dictionary 63 (7th ed. 1999). This corresponds with the definition of "state agency" under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15:
"State agency" or "agency" shall include each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor.
[N.J.S.A. 52:14B-2(a) (emphasis added).]
Clearly, Rule 2:2-3(a)(2), which provides for direct appellate review of agency action including the validity of any rule promulgated by such agency, refers, as does the APA, to those agencies housed within the executive branch of state government that have been empowered by the Legislature to implement legislation, promulgate rules and adjudicate disputes. The Legislature, as the governmental body responsible for creating such agencies by statute and for enacting the laws these agencies are authorized to administer, is therefore excluded from any usual definition of state administrative agency.
We know of no authority holding otherwise and appellant points to none. To the contrary, agencies whose actions have been held to be reviewable in the first instance by the Appellate Division are those located within the principal departments in the executive branch of state government. See, e.g., Prado, supra, 186 N.J. at 422-23, 895 A.2d 1154 (holding that the Attorney General's decision not to provide representation to an employee is reviewable by the Appellate Division, not by the Law Division where the actions against the employee are pending); In re Hartz/Damascus Bakery, Inc., 404 N.J.Super. 49, 59, 960 A.2d 747 (App.Div. 2008) (holding that decisions of the New Jersey Meadowlands Commission, "established in, but not of, the Department of Community Affairs[,]" N.J.S.A. 13:17-5(a), are appealable to the Appellate Division as of right), certif. denied, 198 N.J. 315, 966 A.2d 1080 (2009); Hartz Mountain Indus., Inc. v. N.J. Sports & Exposition Auth., 369 N.J.Super. 175, 187-88, 848 A.2d 793 (App.Div.) (holding that the New Jersey Sports and Exposition Authority, constituted as a body corporate and politic within the Department of Community Affairs, N.J.S.A. 5:10-4a, is a state agency whose decisions are initially reviewable in the Appellate Division), certif. denied, 182 N.J. 147, 862 A.2d 56 (2004); Lacey Mun. Utils. Auth. v. N.J. Dep't of Envtl. Prot., 369 N.J.Super. 261, 273, 848 A.2d 843 (App. Div.2004) (holding that a determination of a New Jersey Spill Compensation Fund arbitrator is reviewable by the Appellate Division); Bullet Hole, Inc. v. Dunbar, 335 N.J.Super. 562, 579, 763 A.2d 295 (App. Div.2000) (holding that the State Police is *772 a state agency); Amico v. N.J. Army Nat'l Guard, 242 N.J.Super. 634, 635, 636-37, 577 A.2d 1298 (App.Div.1990) (holding that an appeal from an order of the Adjutant General reducing the rank of an Army National Guard member is within the jurisdiction of the State Department of Military and Veteran's Affairs and is, therefore, cognizable by the Appellate Division).
In Brady v. N.J. Redistricting Commission, 131 N.J. 594, 622 A.2d 843 (1992), the Court held that the Redistricting Commission created by the Legislature to effect congressional redistricting is a state agency whose decisions are reviewable in the first instance by the Appellate Division. Id. at 606, 622 A.2d 843. In so holding, the Court found that the Redistricting Commission constituted a specialized form of administrative agency, id. at 606, 608, 622 A.2d 843, namely a temporary commission for a special purpose, authorized by the State Constitution, N.J. Const. art. V, § 4, ¶ 1, established by both legislative and executive action, and empowered to "exercise the same type of legislative power as any other administrative agency that had received a similar delegation." Brady, supra, 131 N.J. at 608-09, 622 A.2d 843. As such, the Court found that the Commission's actions, like other final administrative agency decisions, are subject to appeal to the Appellate Division under Rule 2:2-3(a)(2). Id. at 606, 622 A.2d 843. Significant for present purposes, the Court distinguished other commissions which the Legislature is empowered to create under a separate constitutional grant in Article IV, section 5, paragraph 2, the purpose of which is "`to aid or assist [the Legislature] in performing its functions.'" Id. at 608, 622 A.2d 843 (quoting N.J. Const. art. IV, § 5, ¶ 2). In contrast to the congressional redistricting decision, the actions of the latter commissions, established by the Legislature's unilateral power for its own purposes, would not be reviewable by the Appellate Division on direct appeal. See Gewertz v. Joint Legislative Comm. on Ethical Standards, 132 N.J.Super. 435, 436, 334 A.2d 64 (App.Div.) (holding that the Legislature's rules of procedure are not reviewable except on constitutional grounds), certif. denied, 68 N.J. 156, 343 A.2d 444 (1975).
The same reasoning, of course, applies to the actions of the Assembly Speaker challenged here. Simply put, the Speaker is not a state administrative officer within the meaning of Rule 2:2-3(a)(2). In contrast, we have assumed jurisdiction of appeals from a Governor's executive order, as the Governor is the State's chief executive or administrative officer. See, e.g., Commc'ns Workers of Am. v. Christie, 413 N.J.Super. 229, 251, 994 A.2d 545 (App. Div.2010) (stating that appeals challenging the Governor's executive order "were properly filed with this court as a challenge to a final administrative decision or order, pursuant to Rule 2:2-3(a)(2)"); Perth Amboy Bd. of Educ. v. Christie, 413 N.J.Super. 590, 597 n. 5, 997 A.2d 262 (App.Div.2010) (same); Bullet Hole, supra, 335 N.J.Super. at 571-72, 763 A.2d 295 (holding that the Governor's designation of the State Police as point of contact for processing Brady Act background checks of prospective gun purchasers was appealable to the Appellate Division); Dalton v. Kean, 213 N.J.Super. 572, 574-76, 517 A.2d 1224 (App.Div.1986) (rejecting the Governor's contention that action in transferring executive functions under the Executive Reorganization Act of 1969, N.J.S.A. 52:14C-1 to -11, is a non-justiciable political judgment not subject to judicial review), certif. denied, 107 N.J. 110, 526 A.2d 181 (1987).
In Bullet Hole, supra, we concluded that although Rule 2:2-3(a)(2) does not expressly authorize appeals from direct actions by the Governor, nevertheless "the *773 rule encompasses those actions under the rubric of `actions of any state administrative agency or officer,' inasmuch as the Governor is indisputably the State's chief executive or `administrative officer.'" 335 N.J.Super. at 571-72, 763 A.2d 295. In marked contrast to this gubernatorial role and function, it simply cannot be said that the Assembly Speaker is a state "administrative officer" whose actions are directly appealable here.[2]
Appellant nevertheless points to the Law Division decision in Errichetti, supra, which held that the term "state officers" within the impeachment provision of the State Constitution, N.J. Const. art. VII, § 3, ¶ 1, includes members of the State Legislature. 188 N.J.Super. at 326, 457 A.2d 476 (citing State v. Musto, 187 N.J.Super. 264, 454 A.2d 449 (Law Div. 1982), aff'd o.b., 188 N.J.Super. 106, 456 A.2d 114 (App.Div.1983)). Errichetti offers no support to appellant. To begin with, the Law Division was not interpreting Rule 2:2-3(a)(2), which modifies the terms "state officer" and "state agency" with the added qualification "administrative."
Moreover, no case subsequent to Errichetti has interpreted the constitutional impeachment provision, which applies to "[t]he Governor and all other State officers," to be applicable to members of the Legislature. Rather, Errichetti relied on Musto, another Law Division case. Addressing the constitutionality of the forfeiture of public office statute, N.J.S.A. 2C:51-2, the court in Musto, supra, considered the Attorney General's argument "that a state senator is subject to impeachment under the Constitution[,]" 187 N.J.Super. at 298, 454 A.2d 449, but ultimately refrained from so concluding, determining instead that whether removal of senators is limited to the right of the body to expel them or whether impeachment is also a viable method of removal was irrelevant to the issue facing the court. Id. at 300, 454 A.2d 449.
Even more significant, in Errichetti, supra, the State senator who alleged he was unlawfully deprived of his position and salary initiated his action against the President of the Senate in the Law Division, not the Appellate Division, pursuant to Rule 4:69, which provides for actions in lieu of prerogative writs. 188 N.J.Super. at 312, 457 A.2d 476. This was the proper forum for resolution of Errichetti's claim, as it would have been for Vas.
The 1947 Constitution's prerogative writ clause "was intended to streamline and strengthen the traditional prerogative writs which were available in the pre-1947 Supreme Court[,]" In re LiVolsi, 85 N.J. 576, 593, 428 A.2d 1268 (1981), "consolidat[ing] the established prerogative writs of certiorari, quo warranto, prohibition, and mandamus into one action that guaranteed a petitioner the same rights to appeal as were provided by those writs." Alexander's Dep't Stores of N.J., Inc., v. Borough of Paramus, 125 N.J. 100, 107, 592 A.2d 1168 (1991).[3] More important, *774 the 1947 Constitution did not alter the substance of prerogative writ appeals, thus requiring a plaintiff to continue to demonstrate that an appeal could have been brought under one of the common law prerogative writs. See ibid.; Nathan L. Jacobs, Procedure in Lieu of Prerogative Writs, 1 Rutgers L. Rev. (Special Number) 34, 34-35 (1948) ("[T]here was no intent to alter substantive law as distinguished from procedure. Thus, if a prosecutor could formerly have obtained relief through the writs of certiorari, mandamus, quo warranto, or prohibition, he should be entitled to relief under the new procedure. . . .").
Thus, Rule 4:69-1 provides that "[r]eview, hearing and relief heretofore available by prerogative writs and not available under R. 2:2-3 or R. 8:2 shall be afforded by an action in the Law Division, Civil Part, of the Superior Court." In other words, any action available under a pre-1947 prerogative writ that is not an appeal of a state administrative agency decision or under the jurisdiction of the Tax Court must be filed in the Law Division pursuant to Rule 4:69-1. See Selobyt v. Keough-Dwyer Corr. Facility, 375 N.J.Super. 91, 96, 866 A.2d 1018 (App.Div. 2005) (citing Alexander's Dep't Stores, supra, 125 N.J. at 107, 592 A.2d 1168). "Apart from appeals from State Administrative Agencies and from inferior courts, every action formerly instituted by application for prerogative writ will be instituted by the filing of a complaint in the Law Division." Jacobs, supra, 1 Rutgers L.Rev. (Special Number) at 36 (emphasis added).
"To bring an action in lieu of prerogative writs, a plaintiff must show that the appeal could have been brought under one of the common-law prerogative writs," which included the writ of mandamus. Alexander's Dep't Stores of N.J., Inc., supra, 125 N.J. at 107, 592 A.2d 1168.
A writ of mandamus is an order given by a court to a government official "that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result."
[In re Resolution of State Comm'n of Investigation, 108 N.J. 35, 45 n. 7, 527 A.2d 851 (1987) (quoting Switz v. Twp. of Middletown, 23 N.J. 580, 598, 130 A.2d 15 (1957)).]
Thus, mandamus is an appropriate remedy "(1) to compel specific action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but not in a specific manner." Loigman v. Twp. Comm. of Middletown, 297 N.J.Super. 287, 299, 687 A.2d 1091 (App.Div.1997). A ministerial duty is one that "is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J.Super. 131, 140, 534 A.2d 35 (App.Div. 1987) (quoting Case v. Daniel C. McGuire, Inc., 53 N.J.Super. 494, 498, 147 A.2d 824 *775 (Ch.Div.1959)), certif. denied, 110 N.J. 188, 540 A.2d 183 (1988).
The relief appellant seeks here, that "the Clerk of the New Jersey General Assembly be directed to pay the withheld portion of Appellant's salary," is an order to a government official to perform a specific, ministerial action, a set task in terms of mode and manner that leaves no discretion to the official. See N.J. Const. art. IV, § 4, ¶ 7 (mandating that members of the Legislature receive an annual salary); N.J.S.A. 52:10A-1 (setting legislators' salary at $49,000 annually); see generally 52 Am. Jur. 2d Mandamus § 296 (2010) ("One holding a public office is entitled to receive the salary or compensation attached to the office, and where the right thereto is clear and the amount thereof is certain, mandamus is an appropriate remedy to compel its payment by the officer charged with the duty. . . .") As such, the essence of the relief sought here is in the nature of the common law writ of mandamus. That remedy, however, is generally unavailable under Rule 2:2-3 when not directed at a state administrative agency or official. Accordingly, the proper forum for appellant would have been the Law Division as an action in lieu of prerogative writs under Rule 4:69-1, and not by way of direct appeal here.
However, "because the allocation to the Appellate Division is not jurisdictional in the strict subject-matter sense, [we] may, in the public interest, opt to address the merits of a dispute improvidently brought before [us]." Pressler & Verniero, Current N.J. Court Rules, comment 3.2.2 on R. 2:2-3 (2011); see, e.g., Morales v. Cnty. of Hudson, 236 N.J.Super. 406, 420, 566 A.2d 191 (App.Div.1989) (involving emergent jail crises). To this end, Rule 2:10-5 permits us to "exercise such original jurisdiction as is necessary to the complete determination of any matter on review." Resort to original jurisdiction is particularly appropriate to avoid unnecessary further litigation, Pressler & Verniero, Current N.J. Court Rules, comment on R. 2:10-5 (2011); see, e.g., New Jerseyans for a Death Penalty Moratorium v. New Jersey Department of Corrections, 370 N.J.Super. 11, 18, 850 A.2d 530 (App.Div. 2004), aff'd as modified, 185 N.J. 137, 883 A.2d 329 (2005), as where the record is adequate to terminate the dispute and no further factfinding or administrative expertise or discretion is involved, In re City of Plainfield's Park-Madison Site, 372 N.J.Super. 544, 552, 859 A.2d 1232 (App.Div.2004), certif. denied, 182 N.J. 630, 868 A.2d 1032 (2005); DKM Residential Properties Corp. v. Township of Montgomery, 363 N.J.Super. 80, 86, 831 A.2d 110 (App.Div.2003), rev'd on other grounds, 182 N.J. 296, 865 A.2d 649 (2005), and thus a remand would be pointless because the issue to be decided is one of law and implicates the public interest. O'Shea v. New Jersey Schools Construction Corp., 388 N.J.Super. 312, 319, 908 A.2d 237 (App.Div.2006); In re Boardwalk Regency Corp. for a Casino License, 180 N.J.Super. 324, 334, 434 A.2d 1111 (App. Div.1981), aff'd as modified, 90 N.J. 361, 447 A.2d 1335 (1982).
Although the exercise of original jurisdiction should not occur routinely, State v. Kromphold, 162 N.J. 345, 355, 744 A.2d 640 (2000), we conclude it is appropriate to do so in this matter. City of Camden v. Whitman, 325 N.J.Super. 236, 243, 738 A.2d 969 (App.Div. 1999). The issue raised by appellantconcerning unilateral disciplinary action by the Speaker against an Assembly membernecessarily implicates the public interest. It is also purely one of law and no facts bearing on that question are in dispute. Our resolution of the dispute would terminate the matter without need for a remand, thus avoiding unnecessary further litigation. In view of the *776 adequacy of the record and the significance of the legal issue presented, we therefore exercise our original jurisdiction in both the public interest and the interest of judicial economy.

II.
Respondent argues against our exercise of jurisdiction for two additional reasons: (1) in failing to seek review of the Speaker's decision before the full Assembly, Vas did not exhaust his administrative remedies; and (2) Vas's appeal is untimely. We see neither circumstance as precluding the exercise of our jurisdiction.
As to the former, the doctrine of exhaustion may be relaxed in cases, as here, involving only a question of law. Roberts v. N.J. Div. of State Police, 386 N.J.Super. 546, 550, 902 A.2d 304 (App. Div.2006), aff'd, 191 N.J. 516, 924 A.2d 550 (2007). In any event, we view the Speaker's action as final. In order to constitute a final decision, it "should contain adequate factual and legal conclusions [and] should give unmistakable notice of its finality." In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 299, 704 A.2d 1261 (1997). The finality of the Speaker's decision, which was "effective immediately," was made clear in his August 5, 2009 letter to Vas, which denied Vas's request to restore his salary and concluded by stating that the "decision to suspend [Vas's] salary and benefits stands."
As for the timeliness of Vas's appeal, Rule 2:4-1(b) provides that "[a]ppeals from final decisions or actions of state administrative agencies or officers. . . shall be taken within 45 days from the date of service of the decision or notice of the action taken." Vas filed the instant appeal on September 21, 2009, within forty-five days of the Speaker's August 5, 2009 letter denying Vas's request essentially for reconsideration, but beyond forty-five days of the Speaker's July 29, 2009 correspondence initially informing Vas of the suspension of his salary and benefits. See R. 1:3-1. We need not determine the exact trigger date because pursuant to Rule 2:4-4(a), upon motion, an "appellate court, on a showing of good cause and the absence of prejudice, may extend the time fixed by R. . . . 2:4-1(b) (final state administrative decisions) . . . for a period not exceeding 30 days, but only if the notice of appeal . . . was in fact served and filed within the time as extended." In addition, we "have been reluctant to impose the time bar of R. 2:4-1(b) where the issues raised involve significant questions of public interest." Rumana v. Cnty. of Passaic, 397 N.J.Super. 157, 171, 936 A.2d 971 (App.Div.2007).
Here, Vas filed his appeal within the thirty-day time period for extending the forty-five-day limit fixed by Rule 2:4-1(b). We discern no prejudice to respondent in granting Vas relief from the Rule's time requirement by a seven-day extension. More important, Vas's appeal raises an issue of public interest, which warrants relaxation of the time bar.

III.
We now proceed to the merits of Vas's appeal, which we review de novo.
The compensation of members of the Legislature is provided for in the New Jersey Constitution, which states that members of both houses "shall receive annually, during the term for which they shall have been elected and while they shall hold their office, such compensation as shall, from time to time, be fixed by law and no other allowance or emolument, *777 directly or indirectly, for any purpose whatever." N.J. Const. art. IV, § 4, ¶ 7 (emphasis added). Pursuant to this constitutional provision, the Legislature enacted a statute setting the annual amount its members are to be paid:
Members of the Senate and General Assembly shall receive annually, during the term for which they shall have been elected and while they shall hold their office, . . . compensation in the sum of $49,000 beginning with the 2002 legislative year and thereafter. . . . The compensation herein provided shall be paid to each member upon his qualifying into office as such member. . . .
[N.J.S.A. 52:10A-1 (emphasis added).]
The Constitution also grants each house the authority to "be the judge of elections, returns and qualifications of its own members."[4]N.J. Const. art. IV, § 4, ¶ 2. In addition, "[e]ach house shall choose its own officers, determine the rules of its proceedings, and punish its members for disorderly behavior. It may expel a member with the concurrence of two-thirds of all its members." N.J. Const. art. IV, § 4, ¶ 3. In accordance with this provision, "[t]he Legislature has the power to set reasonable rules for the integrity and order of its houses by regulating the conduct of its members." Joint Legislative Comm. on Ethical Standards v. Perkins, 179 N.J.Super. 352, 361, 432 A.2d 116 (App.Div.1981), certif. denied, 91 N.J. 195, 450 A.2d 530 (1982). The Assembly has done so by promulgating the Rules of the General Assembly. Rule 7:6 sets forth the procedure for punishing a member:
The General Assembly may punish its members for disorderly conduct, or any other conduct which it deems contrary to the integrity and general welfare of the House.
Prior to any punishment, the General Assembly shall, by resolution, establish a six-member special committee, three from the majority party and three from the minority party, appointed by the Speaker. The committee shall serve written charges on the member, and provide an opportunity for the member to be heard, to present witnesses, testimony and other evidence, to cross-examine witnesses, and to be represented by counsel. The record of the committee's proceedings shall be transcribed, and shall be made available to any member upon request. The committee shall, as soon as possible, report its findings to the General Assembly. The General Assembly may expel, sanction or censure a member with the concurrence of at least 54 members.
The Rules of the General Assembly also set forth the duties of the Speaker, which include generally directing the proceedings when the Assembly is in session, Rules 4:1 to 4:5, appointing all committees, Rule 4:6, preparing the calendar, Rule 4:7, and signing certificates as to the passage of a bill or joint resolution, Rule 4:8. Assembly rules do not address the Speaker's duty or authority to punish members of the Assembly, either acting on his or her own or on behalf of the entire Assembly.
*778 Viewed against this backdrop, it is clear that respondent's unilateral action in suspending Vas's salary and benefits for "good cause" was ultra vires and therefore unlawful. Simply put, once Vas assumed office as an Assembly member, he was entitled to an annual salary of $49,000 "during the term for which [he was elected] and while [he held his] office." N.J. Const. art. IV, § 4, ¶ 7; N.J.S.A. 52:10A-1.
Granted, the Assembly is authorized to "punish its members for disorderly behavior." N.J. Const. art. IV, § 4, ¶ 3. To this end, the Assembly has established by rule a procedure for sanctioning members that requires the establishment by resolution of a six-member committee to serve charges and administer a hearing before reporting its findings to the full Assembly, which may then impose appropriate sanctions against a member with the assent of fifty-four members. Here, however, respondent acted alone and outside the established internal disciplinary procedure.
Respondent's reliance on cases upholding a public entity's power to suspend an officer or employee pending a hearing or resolution of criminal proceedings related to the misuse of office, see Rutledge v. Gulian, 93 N.J. 113, 122-23, 459 A.2d 680 (1983); Romanowski v. Board of Education of Jersey City, 89 N.J.Super. 38, 40-41, 213 A.2d 313 (App.Div.1965), is misplaced. In addition to being distinguishable for dealing with the suspension of employees rather than the suspension of an Assembly member's salary, there is a fundamental difference between, on the one hand, duly elected members of the Legislature whose salaries are constitutionally guaranteed and statutorily fixed and, on the other hand, public officers and employees afforded no such elevated protection.
In Errichetti, supra, the plaintiff, a state senator convicted of federal criminal charges while in office, sought payment of his salary for his last year in office, which had been ordered withheld by the President of the Senate after Errichetti's conviction and continuous absence from Senate sessions without excuse. 188 N.J.Super. at 313-14, 457 A.2d 476. Defendants, President of the Senate and the Senate, countered that the plaintiff's seat was vacated pursuant to N.J.S.A. 19:3-25, "providing that the office of a member of the Senate or General Assembly shall be deemed vacant if he shall be absent unremittingly for ten days during any session unless excused from attendance," and forfeited pursuant to N.J.S.A. 2C:51-2. Id. at 315, 457 A.2d 476. Errichetti challenged the constitutionality of these statutes, arguing that they established additional qualifications for office and that they provided "a method for removal from office other than the exclusive means authorized by" the Constitution. Ibid.
Considering only the constitutional validity of N.J.S.A. 19:3-25, which was determinative of the case, the court, noting the distinction between exclusion of a person duly elected to the Legislature and expulsion of a currently sitting member, concluded that the statute did not prescribe additional qualifications for office, but simply set reasonable standards for expulsion after assuming office:
The question presented . . . is not the right to be elected to office but whether the Legislature may prescribe reasonable standards for expulsion. . . .
This case presents no issue regarding exclusion of plaintiff from being sworn as a member of the Senate. N.J.S.A. 19:3-25 does not establish a qualification for office but relates to the duties and *779 responsibilities of a Legislator after assuming his office.
[Id. at 320, 457 A.2d 476.]
The court then determined that the constitutional provisions setting forth grounds for the expulsion or departure of a sitting member of the Legislature were permissive and were not "intended to establish exclusive criteria foreclosing the enactment of other reasonable laws to the same end." Id. at 327, 457 A.2d 476. Thus, N.J.S.A. 19:3-25 was a constitutionally valid means of expelling a sitting member of the Legislature, and since Errichetti had vacated his seat, he was not entitled to his withheld salary.[5]Id. at 343, 457 A.2d 476.
More importantly for present purposes, the court noted the parties' agreement that the senator was entitled to his withheld salary if he had not been removed from his seat by operation of either statute: "The parties concede that unless [Errichetti's] elected office was constitutionally vacated pursuant to N.J.S.A. 19:3-25 or forfeited pursuant to N.J.S.A. 2C:51-2 he is entitled to judgment." Id. at 315, 457 A.2d 476. Thus, absent vacatur or forfeiture of office, which is not the circumstance here, Errichetti recognizes that the presiding officer of either house does not possess the unilateral authority to suspend a member's salary. Such disciplinary action must be supported by statutory authority, or as Perkins, supra, makes clear, by house rule:
The Legislature must be free to determine in a comprehensive manner that conduct which is contrary to the interest of order within the legislative system. Our State Constitution is regarded as one of limitational restriction of powers, leaving residual authority and power of the sovereign people of this State in the hands of the Legislature to the extent that such powers have not been restricted. The Legislature has the power to set reasonable rules for the integrity and order of its houses by regulating the conduct of its members; it has additional authority to establish by general laws restrictions on the conduct of persons, including legislators, within a common classification; and it has authority to establish an agency or body to enforce those general laws and to impose penalties on persons who violate such laws.
[179 N.J.Super. at 361 (citations omitted); accord State v. Gregorio, 186 N.J.Super. 138, 147-48, 451 A.2d 980 (Law Div.1982) ("The Legislature is at liberty to deal with [its members] as it sees fit, subject only to its own rules and constitutional strictures.").]
Because respondent's action here was without any constitutional or statutory authority, and clearly contravened the Assembly's very own internal rules for disciplining its members, we deem it null and void.
Reversed.
NOTES
[1] The Speaker of the General Assembly at the time of filing of this appeal, Joseph J. Roberts, Jr., no longer holds that position. Pursuant to Rule 4:34-4, when any public officer is sued in an official capacity and then ceases to hold office, the successor in office is "deemed to have been substituted in unless the court on motion otherwise orders. . . ." There has been no formal substitution naming the current Assembly Speaker as the true party in interest. We have also been advised at oral argument that respondent's counsel has not communicated with the current occupant of that office regarding this matter.
[2] Legislators are not classified as state officers in the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -28, which defines a "state officer or employee" as "any person . . . holding an officer or employment in a State agency . . . other than a member of the Legislature." N.J.S.A. 52:13D-13. "Members of the Legislature" are defined as a separate group. See In re Advisory Comm. on Prof. Ethics Op. 621, 128 N.J. 577, 585, 608 A.2d 880 (1992) ("The [Conflicts of Interest Law] divides public officials into three groups: State officers and employees, special State officers and employees, and legislators.")
[3] The four common law prerogative writs can be described as follows:

Certiorari was used by the pre-1947 Supreme Court to review the actions of inferior tribunals such as administrative agencies. . . . Mandamus was a specific writ used for requiring government officials to carry out required ministerial duties. Quo warranto was used only for challenging the right of an individual to hold a public office. Prohibition was the traditional writ used to block proceedings where a tribunal was acting manifestly beyond its jurisdiction.
[LiVolsi, supra, 85 N.J. at 594, n. 18, 428 A.2d 1268 (citations and internal quotation marks omitted).]
[4] As for the qualifications of Assembly members, the Constitution provides:

No person shall be a member of the General Assembly who shall not have attained the age of twenty-one years and have been a citizen and resident of the State for two years, and of the district for which he shall be elected one year, next before his election. No person shall be eligible for membership in the Legislature unless he be entitled to the right of suffrage.
[N.J. Const. art. IV, § 1, ¶ 2.]
[5] The court also determined that the statute did not offend due process because it did not foreclose Errichetti's right to a hearing. Id. at 342, 457 A.2d 476. By not choosing to request such a hearing, the plaintiff abandoned his opportunity to be heard. Ibid.